## CHARLES CLAPP v. HENRY SEIBRECHT.

A surety on a bond given for the release of property sequestered by the vendor to satisfy his privilege is liable to the vendor, notwithstanding the property was seized and sold to satisfy a judgment rendered to inforce the lessor's privilege for rent of premises in which the property had been stored, and which existed on the property at the time the sequestration was sued out. The obligation of the bond was "faithfully to present the property to answer the judgment in the case;" it was no compliance with the condition of the bond to present the property to satisfy the execution of a third party.

It is a complete answer to a suit upon a bond for the release of the sequestration to show that the plaintiff's right upon the property has been overridden and extinguished by a superior right existing at the time and prior to the sequestration.—SPOFFORD, J., and LEA, J., dissenting.

APPEAL from the Third District Court of New Orleans, *Lea*, J.
*Rawle*, for plaintiff and appellant. *Roselius & Ducros*, for defendant.

MERRICK, C. J. The plaintiff, a creditor of *Lefort* with the vendor's privilege upon certain furniture, obtained a writ of sequestration on the 28th day of June, A. D. 1850. The furniture was in a certain store filled with confectionary etc., belonging to *Lefort* on which one *Blondeau* had the lessor's privilege for rent; seven hundred and fifty dollars of which (for five months) were then due.

The defendant *Seibrecht* in order to enable *Lefort* to continue his business signed his bond and thus released the property from plaintiff's seizure.

*Blondeau* had in April previous instituted his action for three months rent, but no seizure was made, nor judgment by default taken.

Feeling perfectly secure on account of the property in the store subject to his rent, *Blondeau* suffered it to run on until it had accumulated to the sum of $1,800, when, in January, 1851, he instituted his second action, wherein, after judgment he seized the remaining of stock of goods in trade and the furniture sold by *Clapp* to *Lefort* not paid for, which had been previously sequestered. *Clapp* obtained judgment against *Lefort* after answer filed on the 18th February, 1851, decreeing him his privilege on the sequestered property. *Blondeau* took final judgment *by default* in both actions on the 7th of February, 1851, and sold the property seized in his second suit, it being insufficient to pay the amount due him. Of course, when *Clapp's* execution issued there was no furniture to seize and the fi. fa. was returned *nulla bona*.

This suit is brought against *Seibrecht*, the surety on the sequestration bond, to compel him to pay the amount of the judgment obtained by the plaintiff against *Lefort*.

*Seibrecht* in our opinion is responsible, unless he shows that the principal in the obligation complied with it, or was prevented by overpowering force or a fortuitous event. The latter is not pretended.

Let us examine how far there has been a compliance. There has not been a literal compliance, because the obligation of the bond was *faithfully to present the property to answer the judgment in this case.* *Baker* v. *Morrison*, 4 Ann. 373.

It was no compliance therefore with the condition of the bond to present the property to satisfy the execution of some third party.

But it is said there was a substantial compliance, because the property was subject to the lessor's privilege at the time the sequestration was issued and was seized by the Sheriff on account of rent. But at the time of the sequestration the "shelves were full" and there was doubtless enough to have paid vendor and lessor both: for seven months after, and after the establishment had been in the hands of managers, creditors of *Lefort*, of whom *Seibrecht* was one for three or four months, these managers endeavoring to make their money out of the concern, the effects remaining were sold at Sheriff's sale for $994.

There is nothing therefore in this record which shows that there was any inducement on the part of the lessor to interfere with plaintiff's seizure, based as it was upon the strong equity of the vendor, and if he had interfered, it does not appear but there was property sufficient to have paid both privileges.

If the lessor had suffered the property to remain under seizure fifteen days it would have been freed from the lessor's privilege. If *Seibrecht* or some one else had not gone security for *Lefort* in ten days the plaintiff would have been at liberty to have given his bond for the property. The effect of defendant's bond therefore was to prevent the vendor from securing the lessor's lien, and to place the property in a situation where the extent of the privilege upon it was increased by the account both of *Lefort* and himself: 1st. By the sale of the other property subject also to the privilege, and 2nd. By seven or eight months rent in addition.

Now what is the difference, so far as the vendor of movables is concerned, (who is endeavoring to inforce his privilege,) whether the defendant who has bonded the property breaks and destroys it or places it where a lessor's privilege attaches to it and the proprerty is sold to pay the same? The one is no more destructive to his rights than the other. If either of these acts prevent the original debtor from presenting the property to the Sheriff, under the execution, the surety is as much responsible in our opinion in the one case as the other.

So in the case before us the debtor was finally unable either literally or in substance to comply with his bond. But his inability had been occasioned by his own acts and those of his surety and his surety ought to answer for him.

We think the party to whom property is delivered on his bond under a sequestration, is bound not only for his malfeasance but also for his non-feasance.

If the building takes fire or leaks he is bound to remove the goods. If taxes have become due he is bound to pay them and suffer the goods to be sold.

In like manner we think it is an act of nonfeasance, for which he and his surety is responsible, if he suffers rent to accumulate or does not pay that

67

which is already due.  He might as well, with reference to the vendor, suffer the property to burn or be destroyed by exposure to the rain as to be absorbed by legal claims and rent.

The obligator is not released from his obligation, from his want of skill, ability or *means* to perform it.  C. C. 2028.  Had he or his surety paid the rent, the condition of the bond could readily have been complied with.  A party cannot be released from one obligation because he has incurred a more onerous one to some one else.

Again one of the common incidents of personal property is that it is transmissible by delivery and subject to privileges and seizure in the hands of the debtor: and one of the most obvious risks which the surety signing the sequestration bonds runs is from acts of this kind.  We think therefore it is very questionable whether under any circumstances the court ought to listen to an excuse arising from these most apparent risks of the bond.  See *Morgan* v. *Furst*, 4 N. S., 122.  But if it be admitted that such defences can be set up by the surety, the burden of proof should be upon him to show that had the seizure continued the plaintiff would equally have lost his debt.  So far as this action is concerned, as already observed *non constat*, that the lessor would have interferred with the seizure, or if he had, that there was not property enough to pay both lessor and vendor.  Moreover it is shown that in the interval the stock in the store was repeatedly sold out and replenished.

The equity of the case is also with the plaintiff: the defendant, a creditor of *Lefort*, was anxious to keep him in business in order to secure his own debt, *and for three or four months, during which this rent was accumulated, Seibrecht and his co-managers were conducting the establishment for the benefit of themselves and other creditors.*  Instead of paying the rent out of their own pockets, as they ought to have done, this act is made one of the grounds of the release of *Seibrecht* from his bond to the plaintiff.  To release *Seibrecht* under the circumstances, seems to us, not only in conflict with the letter but the spirit of Art. 280 of the Code of Practice, prescribing the condition of the bond.

It is therefore ordered, adjudged and decreed by the court, that the judgment of the lower court be avoided and reversed and that the plaintiff *Charles Clapp* do recover and have judgment against the defendant *Henry Seibrecht* for the sum of four hundred and seventy dollars and twenty-five cents, with five per cent interest thereon from the 28th day of June, 1850, until paid, and that said defendant and appellee pay the costs of both courts.

SPOFFORD J., (dissenting.)  The object of an attachment is to obtain a security for the payment of a money demand; the object of a sequestration is to preserve the property in dispute, *in statu quo*, pending the litigation.

An attachment confers a right to be paid by preference out of the property in favor of the attaching creditor; a sequestration does not.

To release an attachment, the defendant must give bond " to satisfy such judgment as may be rendered;" C. P., 259; to release a sequestration, the condition of the bond, prescribed by law and unalterable by the parties or the courts, is, not to send the property sequestered out of the jurisdiction, nor to make an improper use of it, but faithfully to present the same, after judgment, in case there be a decree for its restoration.  C. P., 280.

*Quo ad* the property sequestered—the plaintiff acquires no greater right than he had before, by the process of sequestration.  *Duclere* v. *Crebassol*, 194, 93.  *Bank of Alabama* v. *Hozey*, 2 R., 153.

Accordingly, it must be a complete answer to a suit upon a bond for the release of the sequestration to show that the plaintiff's right upon the property has been overridden and extinguished by a superior right existing at and prior to the moment of sequestration.

I, therefore, concur in the view of this case presented with force and brevity by the following opinion of the District Judge.

"The plaintiff's sequestration was an invasion of landlord's superior right. If the property had not been bonded, the sequestration would unquestionably have been thwarted by the vigilance of *Mr. Blondeau.*

The defendant's inability to comply with the condition of his bond, was a necessary result of an infirmity in the plaintiff's title. The defendant cannot be taken to have guarantied against that."

For these reasons. I think the judgment appealed from should be affirmed.

Mr. Justice Lea is of this opinion.