(63 South. 383.)

No. 20,121.

WEBSTER LODGE NO. 4, K. P., v. HUNTER.

In re WEBSTER LODGE NO. 4, K. P.

(Nov. 3, 1913.)

*(Syllabus by the Court.)*

1. SEQUESTRATION (§ 20*)—BOND—LIABILITY OF SURETY.

Where property which has been sequestered is bonded, and is subsequently seized and sold to satisfy a judgment for city and state taxes, the surety on the bond is not liable for the amount of the bond, because the lien for taxes was superior to any other lien, and the creditor who has sequestered is not injured by its sale for taxes.

[Ed. Note.—For other cases, see Sequestration, Cent. Dig. §§ 42–49; Dec. Dig. § 20.*]

2. SEQUESTRATION (§ 20*) — SUFFICIENCY — SURETY ON SEQUESTRATION BOND.

Where the surety on a sequestration bond offers to return the bonded property to the sheriff, when the latter attempts to seize it under a judgment and the latter refuses to take it, the surety is relieved from the obligation of making any formal tender.

[Ed. Note.—For other cases, see Sequestration, Cent. Dig. §§ 42–49; Dec. Dig. § 20.*]

Action by Webster Lodge No. 4, Knights of Pythias, against W. S. Hunter. Judgment for defendant, and plaintiff applies for certiorari or writ of review. Dismissed.

W. R. Percy, of Minden, for relator. Roberts & Roberts, of Minden, for respondent.

BREAUX, C. J. Plaintiff sued Jesse Robertson, defendant, for $291.60 for rent due, and obtained a writ of provisional seizure on the 6th day of July, 1911, and provisionally seized property, to which we specially refer later.

W. S. Hunter intervened on the same day, claiming that he was the owner of a certain gum-slot machine seized by the sheriff, which was not the property of the defendant, as he alleged, and not liable for the defendant's debt. He furnished bond for $90, its appraised value, and obtained its release.

On the 13th day of July following, the Knights of Pythias, plaintiff, filed a supplemental and amended petition, in which it alleged that since the filing of the original petition property, consisting of a cash register and a cigar case, was removed on which it had a privilege, and asked for its provisional seizure. It was provisionally seized.

On July 15th of the same year, the defendant, Jesse Robertson, petitioned the court to be permitted to bond four pool tables, one billiard table, one phonograph, a tobacco stand, and 12 chairs. On the same day Jesse Robertson and W. S. Hunter, the former as principal and the latter as surety, signed bond in the sum of $350, and obtained possession of property consisting, as stated in the bond, of four pool tables, one billiard table, 12 chairs, one phonograph, a cigar cutter, being, as alleged, the effects on the lower floor of the Knights of Pythias' Hall in Minden, of which Robertson was the tenant.

The bond states that the inventory of the property was made part of it. We have not found a copy of this inventory.

The sheriff refers to this property as the bonded property which he sold under a fi. fa. He details the property sold.

On the 17th of July, 1911, the tax collecting authority brought suit against Jesse Robertson, tenant of plaintiff, for the sum of $75 and the statutory interest due thereon for nonpayment of a license tax, and obtained a writ of sequestration. The sheriff states in his return, dated July 18, 1911, that under the writ he took in his possession the following property: Four pool tables, one billiard table, and all the fixtures, including ball racks, all as per inventory attached, and all appraised at $107.

The district court rendered judgment for $75 due the state for interest.

Returning to plaintiff's case, Hunter filed an answer to plaintiff's demand, in which he asserted that he complied with the conditions

of the forthcoming bond by surrendering the property, leased to him and to his principal, into the hands of the sheriff, and that at the same time he demanded cancellation of his forthcoming bond, but that the sheriff refused to cancel the bond for the reason that the sheriff was acting in collusion with plaintiff in an effort to enable the plaintiff to collect the amount of his judgment from the defendant, instead of from the property seized by the plaintiff as the property of his principal on said bond. He further alleged that the property released to him and Jesse Robertson on bond was, subsequent to its release, seized by the sheriff for a state and a municipal corporation license, amounting to the sum before mentioned, on which a judgment was obtained, as before stated, and in accordance with judgment obtained, as before stated, the property was sold.

Plaintiff charged the surety and defendant with conspiring to defraud.

We are informed by the record that Hunter intervened and abandoned his intervention and gave up the slot machine.

It further appears that plaintiff obtained a judgment against Robertson, its tenant, for the full amount claimed.

It is stated that on the 5th day of February, 1912, plaintiff under a fi. fa. had property, which was in the possession of Robertson, sold.

The return of the sheriff is not dated. It is sufficient to state that property sold was applied to the payment of taxes.

Plaintiff instituted suit against Hunter as surety on the forthcoming bond after all the property had been sold and credited to the state.

To this suit defendant answered by alleging that he had surrendered, as above noted, the property to the sheriff, but that the sheriff had declined to cancel his bond.

Defendant complained of the action of the Knights of Pythias in recognizing the superior claim of the state and of the town tax collector. Defendant criticized in the pleadings the counsel who represented the Knights of Pythias, as well as the tax collector, in that there was, in effect, a consent to the sale made by the tax collector.

It is true that counsel represented all these interests, but we have not found in his conduct the impropriety charged.

The Court of Appeals reversed the judgment of the district court, whereupon the Knights of Pythias applied to this court for a writ of certiorari.

The first point made by plaintiff here is that the surety, who contended that he had surrendered the property, had no authority to surrender it and demand back the bond; that Robertson, the other defendant, does not appear to have made such a surrender, nor to have asked for the cancellation of the bond.

Whether the property was surrendered, and the objection to the manner of the surrender of that which was surrendered, is one of the grounds, and the other that the superior right of the state for its claim and the sale of the property released the defendant on his bond.

All the property was turned over to the sheriff, who received it. Counsel for plaintiff joined in receiving the property by directing that the proceeds of the sale should be applied to the payment of the superior claim of the state.

In the brief of counsel for plaintiff it appears that in February, 1912, the plaintiff obtained a writ of fi. fa., and had all the property found in the possession of Robertson sold, and afterward the more valuable property, as it is stated, which was in the possession of the surety, was sold. In fact, as well as we can read the poorly made up transcript, it appears that all the property was sold.

The manner of the surrender of the prop-

erty by the principal and surety may not have been formal. There was no tender made, but it is too late to refer to that question. As before stated, it had been réceived and sold, and not the least objection was urged to the delay in giving up the property. As before mentioned, plaintiff, through counsel, in effect accepted the surrender by directing the sheriff to sell the property and apply the proceeds as before stated. It is now too late to urge objection. Although the parties may not have surrendered the property with any degree of good grace, at the same time we have not found that they resorted to anything illegal in order to defeat the possession of the sheriff in any way.

Now as to the liability of the surety because the property was incumbered with a tax privilege which the surety failed to pay: Plaintiff's contention is that the surety was liable on the bond; that it was incumbent upon him to pay the amount for which he was condemned by the district court, which judgment was reversed by the Court of Appeals, as above stated.

The following are extracts from the opinion of the Court of Appeals:

"The answer avers that the defendant has fully complied with the conditions of the bond by surrendering the property released to him and his principal into the hands of the sheriff, and at the time of the said surrender he demanded of the said sheriff the cancellation of the forthcoming bond, which was refused for the reason that said sheriff was acting, either consciously or unconsciously, in collusion with the plaintiff in this suit in an effort to enable the plaintiff to collect the amount of his judgment from the defendant instead of from the property seized by the plaintiff as the property of the principal on the said bond.
"Defendant further shows that Hon. W. R. Percy was counsel for the Knights of Pythias, attorney to assist the tax collector in the collection of licenses, also attorney for the town of Minden and represented all of said parties in the enforcement of said claims asserted by them against the property released to this defendant and to his principal, Jesse Robertson."

The Court of Appeals found:

"That the facts in relation to the alleged surrender of the said property by the defendant,

as well as we can make them out from the well-nigh unintelligible notes of evidence, are about as follows: 'As stated above, the released bond here sued on was executed on the 15th of July. The property it appears had been moved to another building. When on the 18th of the same month, the deputy sheriff went to serve the writ of sequestration in the suit by the parish and state, Robertson, the lessor, and Hunter, the defendant, were both in the place, and the defendant, after learning the purpose of the officer, stated that he desired to "surrender, and called attention to the fact that he did surrender, the property into the custody of the deputy." ' "

That officer, being uncertain as to the proper course in the matter, sought the advice of counsel for plaintiff, who informed the defendant that he could not accept the surrender of the property incumbered.

The surety on the forthcoming bond offered to make a surrender of the property.

If the offer was not formal, plaintiff has no right to complain, for it refused to accept the property. Defendant was not, in the form of a regular tender, obliged to renew the offer.

The Court of Appeals states that it is not contended that the release of the property contributed to the loss suffered by plaintiff's lodge.

Further, that:

"During the three days which intervened between the execution of the bond sued on and the sequestration by the state and parish, there was not the slightest change in the status of the property, and it is as certain as anything of the kind can be that the lodge would have lost its debt in any event, at least so far as any privilege on the property is concerned."

Two cases are cited by plaintiff's able counsel in support of his contention, namely, Gordon v. Diggs, 9 La. Ann. 422, and Clapp v. Seibrecht, 11 La. Ann. 528.

It is impossible to tell, from the brief statement of facts as set forth by the court in the former case, whether the doctrine therein announced has any application to the case at bar and counsel's chief reliance is in the 11 La. Ann. Case.

It is true that the court did, by way

of argument, suggest that it was questionable whether, under any circumstances, the court ought to listen to an excuse arising from the most apparent risks of the bond (the risks of seizure of the property released by other creditors of the seized debtor).

The court continues:

"But what it really decided was that the burden of proof was on the defendant who sued on the forthcoming bond to show that, had the bond not been released, plaintiff would equally have lost its debt, and it declared that the proof did not show this effect, but on the contrary that but for the release the creditor might have collected his debt."

However, the court declared that the equities of the case were with the plaintiff, and pointed out that defendant was a creditor of the seized debtor, and was anxious to keep him in business in order to collect his debt, and was, with other creditors, conducting the business for the benefit of himself and them, while the rent claimed, under which the property was ultimately sold, was piling up against the lessor, instead of paying said rent out of their own pockets.

[1, 2] It will be seen, therefore, that the facts in the above case are in all of their essential particulars entirely different from the case at bar.

In Am. & Eng. Ency. of Law, vol. 13, p. 1138, authorities are cited from a number of states in support of the proposition that it is a sufficient defense in a suit on a forthcoming bond to show that the property has been taken from the obligor under a paramount title or legal process.

Cyc. on Law and Practice, 44, p. 695 et seq., cites many authorities to the same general effect. As we have found no reason to differ from the decision of the Court of Appeals, we have quoted freely from its text.

The effects which the surety had received under the forthcoming bond were returned. No objection was made to their return; they were accepted and sold. The three creditors, to wit, the plaintiff, the state,

and the town, properly agreed to apply the proceeds to the payment of the taxes. Having consented to that disposition of the small amount produced by the sale, they are not now in a position to object and say that they are entitled to the proceeds of the bond. They have not been made to lose anything, and cannot now recover upon the bond simply on a technical ground. We think that the judgment of the Court of Appeals is correct.

For reasons stated, it is ordered, adjudged, and decreed that the writ nisi is recalled, the demand refused, and the petition dismissed, at costs of plaintiff.