Statement of the Case.
O’NIELL, J.
The plaintiff sued on a prom-_ issory note for $2,469.60, drawn by the Himalaya Planting & Manufacturing Company and indorsed by J. Sully Martel. Alleging that the note represented the price of certain seed peas that were necessary and were furnished to cultivate and make a crop on the Himalaya plantation in 1912, and that the claim was therefore secured by a lien on the crops, the plaintiff prayed for and obtained a writ of sequestration, under which the sheriff seized a tank of centrifugal molasses, a tank of second sugar, 33 barrels of sugar, 30 barrels of corn, and 25 loads of hay. The defendant Himalaya Planting & Manufacturing Company, as the owner of the property sequestered, obtained its release on a bond of *479 §5,000 and shipped the sugar and molasses to Prank Barker, a commission merchant and broker doing business in New Orleans in the name of Prank Barker Company. Thereafter the defendant filed a petition, alleging that the sugar and molasses had been sold for $14,408.92, and prayed that Prank Barker Company be appointed custodian and depositary of the fund, in order that the same might be subject to any liens or privileges existing thereon in favor of any creditors who might intervene in this suit. The district judge signed the order making the appointment and commanding the custodian, Prank Barker Company, to hold the fund of $14,408.92 until the further orders of the court. The appointment was accepted on the condition and with the stipulation that it should not prejudice the right of Prank Barker (dealing in the name of Prank Barker Company) to retain the fund of $14,408.92, or so much thereof as was not affected by a superior lien, in part payment of a promissory note held by him for $18,000, signed by the Himalaya Planting & Manufacturing Company.
After the sugar and molasses had been released on bond, the following named creditors of the Himalaya Planting & Manufacturing Company filed interventions and oppositions, claiming liens on the proceeds of the sale in the possession of Prank Barker Company and constructively in the custody of the court, viz.:
The Texas Oil Company claimed a lien to secure the payment of $9,994.14, the price of 6,246.34 barrels of fuel oil furnished and alleged to have been used for harvesting and manufacturing into sugar and molasses the sugar cane grown on the Himalaya plantation in 1912. This intervener claimed, primarily, the lien accorded by paragraph No. 1 of article 3217 of the Civil Code, on the crops of the year and the proceeds thereof, to secure debts' due for necessary supplies furnished to the farm or plantation; and, in the alternative, the intervener claimed the lien granted by paragraph No. 6 of that article, and more particularly by article 3226 of the Civil Code, to secure the debt incurred for the preservation of the crop of 1912.
H. T. Cottam & Co., Limited, claimed a lien to secure the payment of a promissory note for $6,000 with 8 per cent, interest thereon from its date, August 6, 1912, identified with a contract of pledge of the crops of that year made pursuant to Act No. 66 of 1874.
The People’s Bank of Donaldsonville, La., claimed a lien, under article 3217 of the Civil Code, to secure the payment of a promissory note drawn by the Himalaya Planting & Manufacturing Company, for $500, bearing interest at 8 per cent, from the 21st of November, 1912, and 10 per cent, attorneys’ fees. This intervener alleged that the note represented money advanced and used for paying necessary .expenses of the defendant’s plantation, for labor employed in making and harvesting the crop of 1912.
Herbert A. Shilstone claimed a lien to secure the payment of a balance amounting to $594.75 due to him on his salary as sugar chemist of the defendant company for the grinding season of 1912.
Prank Barker also filed a petition of intervention and third opposition, claiming a lien under article 3217 of the Civil Code, to secure the payment of $18,000, represented by a promissory note drawn by the defendants in solido, bearing interest at 7 per cent, from its date, that is, from April 9, 1912. He alleged that the fund held by him was not subject to any lien in favor of the plaintiff, nor in favor of any other intervener. He alleged that the fund in his possession was seized on the 19th of March, 1913, and that interrogatories were then served upon him as garnishee, by the United States marshal, under and by virtue of a writ of fi. fa. issued on a judgment rendered by the United States *481 district court, in favor of the Armour Fertilizer Works and against both of the defendants herein, in solido, for $4,283.13, with interest at 6 per cent, from December 20, 1912, and 10 per cent, attorneys’ fees, subject to a credit of $744.75. The intervener, Barker, alleged that he was compelled to answer the interrogatories served upon him as garnishee, and that he should be protected by the orders of the court under whose orders he held the fund.
The Armour Fertilizer Works filed an intervention and third opposition, asserting a lien as a result of the seizure of the fund, and alleging that there was no lien in favor of the plaintiff or any other intervener, because the sugar and molasses sequestered was made from cane that was not raised, but bought, by the debtor, the Himalaya Planting & Manufacturing Company.
The Lafourche Lumber Company, Limited, obtained a judgment against the Himalaya Planting & Manufacturing Company for $2,-380.31; Mrs. Annie Flower Pugh obtained judgment for $707.30; George A. Menuet obtained judgment for $326.06; and William A. Dill obtained judgment for $556.20. These four creditors caused writs of fi. fa. to issue, and had the sheriff to levy constructive seizures on the fund, by serving notices of seizure (upon the defendant, in April, 1913. Thereafter each of them filed a petition of intervention ¡and third opposition in this suit, asserting the lien resulting from the seizure of the fund, and denying 'that the plaintiff or any other intervener had a lien on the crop of 1912 or on the proceeds thereof.
Alcide Martel intervened, claiming a lien to secure a balance of $93, due him on his salary as overseer of the Himalaya Plantation in 1912.
J. Gabriel Martel intervened, claiming subrogation to certain laborers’ wages, amounting to $163.05, assigned to him. Dan Peeot intervened, claiming a lien to secure a balance of $125, due on his salary as manager and overseer in 1912, and to secure $150, advanced by him and used for the purchase of necessary supplies and the payment of necessary expenses of the plantation in 1912.
The L. Baist Cooperage Company, Limited, obtained a judgment against the Himalaya Planting & Manufacturing Company for $609.60, the price of a lot of molasses barrels used for shipping the product of the crop of 1912; and thereafter intervened in this suit and asserted a lien on the crop of 1912 and the proceeds thereof.
The Percy Lobdell Company, Limited, obtained judgment agiainst the Himalaya Planting & Manufacturing Company for $977.27, with 6 per cent, interest from September 30, 1912, and 10 per cent, attorneys’ fees, and $3.54 protest fees, on a promissory note, representing the price of a lot of feed sold to the defendant company in 1912. In April, 1913, a writ of fi. fa. issued on the judgment, and the civil sheriff of the parish of Orleans levied a seizure by serving notice thereof on Frank Barker. Thereafter the Percy Lobdell Company Limited, filed a petition of intervention and third opposition in this suit, asserting a lien on the proceeds of the crop of 1912, as the furnisher of necessary supplies, and a lien resulting from the seizure of the fund.
Gaston Cabiro filed an intervention and third opposition, asserting a lien to secure $375 alleged to have been advanced by him and used for the payment of necessary expenses of the plantation in 1912.
The Monongahela River Consolidated Coal & Coke Company intervened, claiming a lien to secure $543.75, due for coal sold to the defendant and used in the locomotive hauling sugar cane to the mill in 1912.
Each claimant in this coneursus proceeding denied that the others had any lien on *483 the fund in dispute; and, after trial on the foregoing pleadings, judgment .was rendered as follows: The lien and privilege granted by article 3217, par. No. 6, and by article '3226, R. O. C., for charges incurred for the preservation of the crop of sugar cane was recognized in favor of the Monongahela River Consolidated Coal & Coke Company to secure the payment of $543.75 due for coal, and in favor of the L. Baist Cooperage Company to secure the payment of $609.60 due for molasses barrels, with legal interest from the 3d of February, 1912, and in favor of the Texas Oil Company to secure the payment of $3,794 due for fuel oil. The plaintiff and all other interveners and third opponents were denied the ‘liens asserted by them, but each was recognized as an ordinary creditor of the Himalaya Planting & Manufacturing Company for the sum shown to be due; and it was ordered that the balance of the fund in contest be paid to them and divided among them pro rata, after payment of the privileged claims of the Monongahela River Consolidated Coal & Coke Company, the L. Baist Cooperage Company, Limited, and the Texas Oil Company, and the payment of all costs of court.
The plaintiff and the interveners, H. T. Cottam & Co., Limited, Frank Barker, the Armour Fertilizer Works, the Lafourche Lumber Company, Limited, Percy-Lobdell Company, Limited, Mrs. Annie Flower Pugh, William A. Dill, Gaston Cabiro, and George A. Menuet, appealed; and the People’s Bank, Herbert L. Shilstone, Alcide Martel, X Gabriel Martel, and Dan Peeot filed answers to the appeal, praying that the judgment be amended so as to recognize and allow the liens claimed by them, respectively. The Texas Oil Company has also filed an answer, praying that the amount for which the lien was recognized in its favor be increased to $6,499.20.
Opinion.
[1] The plaintiff is not concerned with the contest among the interveners or opponents, whose petitions were filed after the property sequestered was released on bond. In fact they have no standing as interveners or third opponents in this suit if the proceeds of the sale of the sugar and molasses is not in the custody of the court, actually or constructively. It is well settled that one who asserts a claim upon or to property that has been sequestered and released on bond has no claim on the forthcoming bond or release bond, but must pursue the property itself. See Gordon v. Diggs, 9 La. Ann. 422; Clapp v. Seibrecht, 11 La. Ann. 528; Burbank v. Taylor, 23 La. Ann. 751; Carroll & Co. v. Bridwell, 27 La. Ann. 239; and Phifer v. Maxwell, 28 La. Ann. 862. The decision rendered in Viguerie v. Viguerie et al., 133 La. 406, 63 South. 89, is not to be regarded as authority to the contrary, since the ruling on that issue in the ease was declared unnecessary on the application for rehearing.
The plaintiff avoided taking any part in the contest among the interveners, because, if he was entitled to have the writ of sequestration maintained, his claim against the surety on the forthcoming bond could not be affected by any superior lien on the sugar and molasses that was bonded and disposed of. The situation would be different if the sugar and molasses had been sold as perishable property and the proceeds retained by the sheriff under orders of court. But the sugar and molasses was not sold by an officer of the court, nor under orders of the court. It was released to the defendant; and the appointment of a custodian of the proceeds of the sale of it, for the protection of creditors having liens on it, was done only at the instance of the defendant, to protect the surety on the forthcoming bond, and was entirely irregular. It could not affect the *485 surety’s responsibility to the plaintiff, without the latter’s consent.
Of the 1,000 bushels of peas sold by the plaintiff, for the price for which this suit was instituted, 397.18 bushels were planted on lands cultivated by the defendant company, 366.68 bushels were sold by the defendant to the tenants of the defendant company and planted on leased lands, and 236.14 bushels were sold by the defendant to other parties whose cane was bought by the defendant and ground at its factory.
A crevasse in the levees of the Mississippi river destroyed the crops of the Himalaya Planting & Manufacturing Company in 1912, leaving not enough cane for seed for the next year. All of the cane raised by the company in 1912, therefore, was planted, and some more was bought for seed cane for the crop of 1913.
Only 18,163 tons of cane was ground at the factory of the defendant company in 1912. Of this, 4,847 tons was raised and sold by the tenants of the defendant company, and 13,316 tons was bought from other cane growers. The price per ton paid for the cane raised by the tenants was 85 cents for each cent that prime yellow clarified sugar sold for on the New Orleans sugar exchange. The tenants were charged rent for the lands they cultivated at the rate of 50 cents for every ton of cane they raised, over and above the quantity required for seed cane to plant the original area. They -furnished their own supplies, employed their own laborers, and used their own teams, and the cane was at their risk until it was cut and delivered to the defendant. They gave their promissory notes for the peas they bought from the defendant. The notes were discounted at a bank by the defendant, and were paid out of the proceeds due to the tenants as the price of their cane. The 236.-14 bushels of peas sold by the defendant to other cane growers, whose crops were bought by the defendant, were also paid for out of the proceeds due them from the sale of their cane.
The sugar and molasses sequestered in this suit consists mainly of second sugars and centrifugal molasses, produced partly from cane raised by defendants’ tenants and partly from cane bought from other planters. None of the cane from which this sugar and molasses was made was raised by the defendant. It was all bought and paid for by the defendant, and was free from any lien or privilege or debt incurred in its planting, cultivation, or harvesting.
The plaintiff relies upon paragraph No. 1 of article 3217, R. C. C., for recognition of a lien or privilege on the sugar and molasses sequestered, viz.:
“The debts which are privileged on certain movables, are the following:
“1. The appointments or salaries of the overseer for the current year, on the crops of the year and the proceeds thereof; debts due for necessary supplies furnished to any farm or plantation, and debts due for money actually advanced and used for the purchase of necessary supplies and the payment of necessary expenses for any farm or plantation, on the crops of the year and the proceeds thereof.”
The plaintiff’s counsel contend that the term “crops of the year” includes all of the sugar and molasses manufactured in the factory on the plantation, whether from cane that was raised by the manufacturer of the sugar and molasses, or from cane bought from his tenants or lessees or even from other cane growers.
When the Civil Code was adopted, the cultivation of sugar cane and the manufacture of sugar and molasses therefrom was all one business. Central factories for the grinding of cane raised by others than the sugar manufacturers were not in existence nor in contemplation. Every sugar planter had his own mill and ground his cane on the farm where it had grown. It is certain, therefore, that the Legislature did not intend to create a lien or privilege on sugar and molasses *487 maufaetured from cane bought by the manufacturer, to secure a debt due by him for supplies furnished to a farm or plantation cultivated by him. “Témpora mutantur et nos mutamur in illis,” is for the Legislature, not the courts, to consider. No doubt the Legislature has considered the changes that have taken place in the sugar industry during the 46 years, since our Civil Code was revised. Some statutes have been enacted with regard to liens on the product of sugar cane bought by sugar manufacturers. But the Legislature has not granted a lien on the product of cane bought by a sugar manufacturer, to secure a debt due by him for supplies sold to him and used by him for the cultivation of his own crops. Nor has the Legislature granted a lien on the crop raised by a lessee or tenant at his own cost and expense, to secure a debt due by the landlord for plantation supplies bought by him and not paid for, but sold by him to the lessee or tenant, and paid for by him to the landlord.
In the case of Saloy v. Dragon, 37 La. Ann. 71, decided 31 years ago, the question was presented whether a laborer employed only in a sugar house during the grinding season had a lien on the sugar and molasses produced from cane raised by the manufacturer. It was held that the legislative intent was to confer the privilege upon plantation laborers who had worked on the crop in any of its stages, in the planting, cultivating, and harvesting, and in preparing it for market. But, when it came to the product of cane that had been bought by the manufacturer, the Legislature found it necessary to create, and did create by Act No. 185 of 1914, a lien to secure the salaries or wages of the managers, mechanics, and laborers employed in a sugar factory or syrup mill. It seems to have been taken for granted, in the second section of Act No. 27 of 1894, that a laborer in a sugar factory had a lien on the product of cane that had been bought because, in granting a lien to the vendors of sugar cane to secure the payment of the price, on a certain proportion of the output of the factory, it was provided that the lien should rank next after the privileges then accorded bylaw in favor of the laborers who assisted in manufacturing the sugar. But the subsequent legislative interpretation was that a laborer in a sugar factory had no lien to secure his wages on the manufactured product, except on that of the cane raised by the manufacturer; hence Act No. 185 of 1914.
[2] The Legislature has not seen fit to extend the lien granted by the first paragraph of article 3217, R. C. C., to the furnisher of supplies, “on the crops of the year and the proceeds thereof,” to the sugar and molasses manufactured from cane bought by the manufacturer; and we cannot give the article of the Code such a liberal construction. See Minge & Oo. v. Barbre, 51 La. Ann. 1295, 26 South. 180.
[3] Our conclusion is that the plaintiff had not a lien or privilege on the sugar and molasses sequestered in this suit. As to the 30 barrels of corn and 25 loads of hay, there is no evidence that it formed a part of the product intended for market, or that it was more than enough for the use of the plantation during the year. In fact, there is no evidence at all regarding it. It was not mentioned in the petition praying for the release of the molasses on bond, and from its meager quantity, we assume that it was not nearly enough to run the plantation a year; that it was not affected by any lien or privilege, nor subject to a separate seizure and sale. See Milliken & Farwell v. Roger et al., 138 La. 823, 70 South. 848.
The People’s Bank, Prank Barker, Alcide Martel, J. Gabriel Martel, Dan Pecot, the Percy Lobdell Company, Limited, and Gas-ton Cabiro also depend upon the first paragraph of article 3217, R. C. C., for a lien *489 on the fund in dispute. The evidence shows that the proceeds of the note held by the People’s Bank went to pay the wages of laborers who cultivated the defendant’s crop that was partly destroyed by the flood ánd partly used for seed cane for 1913. The same is true of the money advanced by Frank Barker and of that loaned by Gaston Cabiro, and of the feed sold by the Percy Lobdell Company, Limited, and of the services rendered, as overseer, by Alcide Martel and Dan Pecot, and of the money advanced by the latter, and of the labor performed by the men who assigned their claims to J. Gabriel Martel.
[4] As to the demand of Herbert L. Shilstone for recognition of a lien to secure the salary due him for services rendered as chemist in the sugar factory, it is sufficient to say there is no statute granting a lien to secure the salary of a chemist.
As to the lien claimed by the Lafourche Lumber Company, Limited, by Mrs. Annie Flower Pugh, George A. Menuet, William A. Dill, and by the Armour Fertilizer Works, as a' result of their constructive seizures of the fund in the hands of Frank Barker, our opinion is that these constructive seizures amounted to nothing. Frank Barker was a creditor of the defendant Himalaya Planting & Manufacturing Company, for an amount exceeding the fund resulting from the sale of the sugar and molasses sequestered in this suit. When the defendant released the sequestered sugar and molasses on a forthcoming bond and shipped and sold it, the commission merchant had a right to retain the proceeds as a credit on the debt due to him for advances. At that time, no creditor claimed a lien on the sugar or molasses, except the plaintiff, who was protected with the forthcoming bond, and there was no proceeding pending, as far as this record discloses, seeking to distribute the proceeds of the crop, as the common pledge of the creditors of the Himalaya Planting & Manufacturing Company. The- district court had no authority whatever, after having ordered the sugar and molasses released from seizure on a forthcoming bond, to order Frank Barker to hold the proceeds of the sale of it subject to the orders of the court. And the latter, in accepting the order, had the right to stipulate, as he did, that the order should not prejudice or affect his right to retain the fund or so much thereof as was not subject to a superior lien, as a partial payment of the debt due by the Himalaya Planting & Manufacturing Company to Frank Barker Company.
At the time of the service of the notices of seizure upon Frank Barker Company, the latter was not indebted to the Himalaya Planting & Manufacturing Company, and did not hold any fund belonging to that company, except to the extent that Frank Barker Company, was obligated to pay any debt that was secured by a lien on the sugar and molasses and its proceeds. The demands of the Lafourche Lumber Company, Limited, of Mrs. Annie Flower Pugh, of George A. Menuet, of William A. Dill, and of the Armour Fertilizer Works, for recognition of a lien or privilege as the result of their constructive seizures, were therefore properly denied by the district court.
[5] We are of the opinion that the judgment appealed from is erroneous, and must be reversed in so far as it recognizes a lien in favor of the Texas Oil Company, the L. Baist Cooperage Company, Limited, and the Monongahela River Consolidated Coal & Coke Company. The lien or privilege granted by tire sixth paragraph of article 3217, R. C. C., and more particularly by article 3226, R. C. C., to secure debts incurred for the preservation of a thing, was not intended to apply to debts incurred in converting raw material into a manufactured product. The Legislature has so interpreted the law, by *491 adopting Act No. 185 of 1914, granting a lien to secure the wages of managers, mechanics, and laborers employed in a sugar factory or syrup mill, on all of the sugar, molasses, and syrup manufactured during the term of such employment. There would have been no reason for adopting that statute if the sixth paragraph of article 3217 and article 3226, R. O. 0., created a lien or privilege to secure the wages of employés in a sugar factory or syrup mill, on the product of the cane bought by the manufacturer. If the wages of the employes of a sugar factory or mill are not to be considered expenses incurred for the preservation of the cane, neither can the price of the fuel oil, coal, or barrels be considered expenses incurred for the preservation of the cane or its products.
[6] The note of H. T. Cottam & Co., Limited, for $6,000, with interest at 8 per cent, per annum from the 6th day of August, 1912, and 10 per cent, attorneys’ fees, is secured by an act of pledge of the crops cultivated by the tenants as well as the crop cultivated by the defendant. The evidence shows that $4,-200 worth of supplies was furnished after the contract of pledge was signed. Approximately $1,800 was charged off for goods sold before the contract of pledge was signed. This amount, therefore, according to the ruling in Bank of Commerce v. Sullivan, 117 La. 163, 41 South. 480, is not secured by the pledge or the privilege conferred by the contract of pledge, under Act No. 66 of 1874. The pledge of that portion of the crop belonging to the tenants of the pledgor conferred no right upon the pledgee at the time the contract was made. But the subsequent purchase of the crops, by the pledgor, related back to the time of the contract of pledge and made it valid. Article 3144, R. C. C., provides that:
“If at the time of the contract the debtor had not the ownership of the thing pledged, but has acquired it since, by what title soever, his ownership shall relate back to the time of the contract, and the pledge shall stand good.”
The copy of the contract of pledge filed in evidence is certified to only by the notary public before whom it was passed; hence there is no evidence that the act was recorded in the manner required by law. We shall remand the case, therefore, to allow H. T. Cottam & Co., Limited, to prove that the contract of pledge was properly recorded, and thereby have the same recognized as securing the payment of $4,200, with interest at 8 per cent, per annum from the 6th of August, 1912, and 10 per cent, attorneys’ fees, if it was properly recorded.
For the reasons assigned, the judgment appealed from is annulled and set aside; and it is now ordered, adjudged, and decreed that the plaintiff, Manuel Coguenhem, recover of and from the defendants Himalaya Planting & Manufacturing Company, Limited, and J. Sully Martel, in solido, $2,469.61, with interest thereon at 8 per cent, per annum from the 1st of December, 1912, and $3.50, with interest thereon at 5 per cent, per annum from the 12th of December, 1912. The writ of sequestration is hereby dissolved, and the liens asserted by the plaintiff and by all interveners and opponents are disallowed and denied, except the lien or privilege claimed by H. T. Cottam & Co., Limited, by virtue of the contract of pledge, which shall be recognized as securing $4,200, with interest at 8 per cent, per annum from the 6th of August, 1912, and 10 per cent, attorneys’ fees, provided the contract of pledge was properly recorded. Reserving the aforesaid sum to satisfy the claim of H. T. Cottam & Co., Limited, Frank Barker, dealing in the name of Frank Barker Company, shall retain. the balance of the fund of $14,408.92 in part payment of his note for $18,000 of the Himalaya Planting & Manufacturing Company, Limited. This case is remanded to the dis *493 trict court to determine whether the contract of pledge by the Himalaya Planting & Manufacturing Company to H. T. Cottam & Company, Limited, was properly recorded. The costs hereof are to be paid from the aforesaid fund in the possession of Frank Barker, dealing in the name of Frank Barker Company.
MONB.OE, C. J., takes no part.