No. ——

First Circuit

STRICKLAND v. WINN

(January 28, 1926, Opinion and Decree)
(March 2, 1926, Rehearing Refused)

(*Syllabus by the Editor.*)

1. Louisiana Digest—Sequestration — Par. 18, 24, 25, 27; Act of God—Par. 2.

Although the obligation of a forthcoming bond in sequestration proceeding under Article 280 of the Code of Practice provides "that he will faithfully present them, after definitive judgment in case he should be decreed to restore the same to the plaintiff" nevertheless if he is prevented by a fortuitous event or irresistible force from complying with the obligation, he is exonerated from liability and cannot be held for the value of the destroyed.

(See Civil Code, Article 1933, Paragraphs 2 and 3. Editor's Note.)

Appeal from the Parish of Jefferson Davis, Hon. Thomas F. Porter, Judge.

Action by Mrs. Dorothy Strickland against Hezekia Winn, et al. There was judgment for plaintiff and defendants appealed.

Judgment reversed.

McCoy and Moss, of Lake Charles, attorneys for plaintiff, appellee.

Modisette and Adams, of Jennings, attorneys for defendants, appellants.

MOUTON, J.  In a suit instituted by plaintiff and her husband against Hezekia Winn, she obtained the sequestration of a horse or mare named Lena, together with other movable effects. The animal was released from the seizure under a bond furnished by Hezekia Winn with Thomas H. Winn, as his surety. After definitive judgment had been rendered in the sequestration suit, Hezekia Winn delivered all the movables which had been released from the seizure, with the exception of the horse, Lena.

Plaintiff brings this suit on the forthcoming bond against Hezekia Winn and Thomas H. Winn, surety, for the value of the animal. Judgment was rendered below against defendants in solido for $50.00 which the court found to be its true value.

Defendants appeal.

The bond was furnished under Article 280, C. P., which permits the release of movables from seizure in sequestration proceedings upon defendant furnishing the required security. His obligations under the bond are that he shall not send the movables out of the jurisdiction of the court, will not make an improper use of them, "and that he will faithfully present them, after definitive judgment, in case he should be decreed to restore the same to the plaintiff". It is with the proper application of the last clause of Article 280, C. P., which appears between the above quotation marks, that we are concerned in the decision of this case.

The proof shows that the horse, Lena, died of a disease known as Blindstaggers and without any negligence or fault whatsoever on the part of Hezekia Winn, the principal on the release bond, in whose possession she was at the time of her death. The obligation of the defendant under the clause before mentioned is to restore the movable or movables to plaintiff if he obtains definitive judgment in the sequestration suit. The article is absolutely silent as to the payment of the value of the article or articles in case of loss or destruction. The following Article 281, which permits the release of immovables, provides that in case of the waste or loss of the fruits of the property, the party on the bond shall pay for their value. It seems to us if the law had intended to require the payment of the value of the

movables released under Article 280, a provision similar to the one found in Article 281 would have been inserted in that article of the code.

Counsel for plaintiff contends that Hezekia Winn, principal on the bond, received the animal in bad faith, and that although the loss of Lena was caused by a fortuitous event, he is nevertheless liable for its value under provisions of Article 2312, Civil Code. The possession of the defendant with which we are concerned in the determination of this suit, was obtained under a release bond, his possession was allowed by judicial authority, was legal, was not in bad faith, and is not controlled by Article 2312, Civil Code.

The obligation of the defendant was contractural. His obligation was to restore Lena to the plaintiff. This is what he was specifically obligated to do under his bond or contract. The general rule in such cases is, if the obligor fails to execute his obligation, he becomes responsible for the inexecution of his contract. When he is, however, prevented by a fortuitous event or irresisitible force from complying with it, he is exonerated from liability and cannot be held for the value of the thing destroyed. C. C., 1933, paragraph 2-3.

In the decisions of our courts on this subject, no consideration is given to the articles of the Civil Code above referred to by us, and seem altogether restricted to the provisions of Article 280, C. P. We shall therefore direct our attention to an analysis of the decisions of our courts which are pertinent to the issue presented under that Article of the Code of Practice.

Counsel for plaintiff refers us to the case of Segassie vs. Piernas, 26 La. Ann. 742, as being decisive of this vexed question. In that case, the defendant was held responsible for the value of the fruits and revenues of movable property. Article 280,

is certainly entirely silent insofar as imposing any liability on a release bond for either the fruits or revenues of movables. Such a liability is provided for under Article 281, for the fruits or revenues derived from landed property. That decision does not enter into a full discussion of the proposition in question, throws little light on the subject, and is somewhat unsatisfactory.

In Clapp vs. Seibrecht, 11 La. Ann. 528, the subject under discussion was fully threshed out by a divided court, two of the justices dissenting. In that case, Lefort was running a confectionery store in which some of his furniture was burdened with a vendor's privilege in favor of Clapp, the plaintiff in the suit. Blondeau, Lefort's lessor, had a lessor's privilege on the movable effects he had in the store including the furniture. This furniture was seized by Clapp and was released on bond by Lefort and Seibrecht as his surety. Blondeau, feeling perfectly secure as lessor, suffered his rent to run until it had accumulated into a large sum. Blondeau obtained judgment for his rent and had the furniture sold. Later, Clapp got judgment on his vendor's privilege, but when the fi. fa. was issued on his judgment the furniture had already been sold by Blondeau, and the fi. fa. was returned nulla bonna.

The court found that it was an act of nonfeasance on the part of Lefort the principal on the bond to have allowed the rent to increase in favor of his lessor. It also found that the surety, Seibrecht, was anxious to keep Lefort in business to secure a claim he had against him and with co-managers, was conducting the Lefort business for themselves and other creditors.

Under that state of facts, and by reason of the strong equities which existed in favor of the plaintiff, Clapp, Seibrecht, the surety, was held liable to him for amount of the judgment he had obtained

against Lefort. In that case the majority of the court, in referring to Seibrecht, surety on the sequestration bond, said: that he was responsible, "unless he shows that the principal on the obligation had complied with it or was prevented by overpowering force or a fortuitous event". The court said, the latter is not pretended. This is certainly not the case here, as it is clearly shown that Hezekia Winn, the principal on the bond, was clearly unable to comply with it, because of the death of the animal released, which was caused by an overpowering or irresistible force.

In a later case, LaBarre vs. Burton-Swartz Cypress Co., 133 La. 862, 63 South. 380, the property released on bond was subsequently seized under a tax lien, and was sold. It was there held that the surety on the bond was not liable because the tax privilege was superior to any other claim or lien on the property. The court in that case made special reference to the suit of Clapp vs. Seibrecht, 11 La. Ann. 528, and took occasion to remark that the court had in that case, based its finding on equitable considerations to which we have hereinabove alluded to. In the LaBarre vs. Burton-Swartz Cypress Co., 133 La. 862, 63 South. 380, above referred to, the court said that a number of authorities from other states held that it was a sufficient defense in a suit on a forthcoming bond to show that the property had been taken from the obligor under a paramount title or legal process. The expression of the court in that case shows that it was inclined to adopt the views of the courts of other jurisdictions on this subject. In view of this apparent disposition of the court to rely on common law jurisprudence in solving this question, we think, it is not inappropriate to quote from R. C. L., vol. 17, p. 246, par. 128, where it is said:

"It seems that if the property is lost or destroyed without the fault of the obligors, as in the case of fire, such obligors will be held to be discharged, their liability resting wholly on a contract, the performance of which has been rendered impossible."

Here, the obligors were certainly not insurers, and we can not see how they can be held when the property has been destroyed by a superior force. The performance of the contract has been made impossible and they should be discharged from their obligations thereunder.

It is therefore ordered, adjudged and decreed that the judgment appealed from be avoided and reversed, and that the demand of the plaintiff be rejected at her cost.