ELLIS, Judge.
Pursuant to a, suit filed by Union Truck Terminal, Inc. against Samuel Perlstein for transportation charges this cause was submitted to the District Court on an agreed statement of facts as follows:
“Samuel Perlstein contracted with Union Truck Terminal, Inc., to haul certain ba- , nanas from Miami, Florida to Ponchatoula,, Louisiana Jo be processed into frozen bananas by Marion T. Fannaly, Inc.”
■ “Perlstein refused-to pay the transportation charges and Union.-Truck Terminal, Inc. had the -said bananas garnisheed under á nonresident writ of attachment. Marion T. Fannaly, Inc. whs served with interrogatories -before Perlstein was billed. The interrogatories were duly answered and possession of 941 thirty-pound cans of frozen bananas belonging to Samuel Perl-stein was admitted. However, Marion Fannaly, Inc. claimed to have a privilege superior to that of Union Truck Terminal, Inc.’s on the said bananas for the sum of $2,051.12 for materials used by packing, unloading, grading, freezing and storage. Said claim being itemized as per attached statement.”
“Union Truck Terminal, Inc. obtained judgment against Samuel Perlstein for the sum of $1,093.17, plus costs and interest, and the bananas were sold by the Sheriff under an order of Court which provided that the proceeds of said sale would be deposited in the registry of the Court, and if not sufficient to satisfy both claims, the question of priority would then be determined. This is the question now before the Court. The bananas brought $2,000.00 at the sale.”
The trial court recognized the claim of intervenor, M. T. Fannaly, Inc. as being superior to that of plaintiff-appellant, Union Truck Terminal, Inc.,-ordering the net proceeds of the sale be paid over to the in-terveno'r, and from this judgment plaintiff has appealed, the only question for determination thereon being the priority of liens as between the transporter of the bananas and M. T. Fannaly, Inc., garnishee-appellee. The appellee bases its-claim of priority on the following articles-of the Civil Code:
Article 3217(6) — “The debts which are privileged on certain movables, are the following:' * * *
“The debt due for money laid out in preserving the thing.”
Article 3224 — “He who, having in his possession the property of another, whether in deposit or on loan or otherwise, has been obliged to incur any expense for its preservation, acquires on .this property two species of rights.”
*317 • Article 3225 — “Against the owner of the thing, his right is in the nature of that of pledge, by virtue of which he may retain the thing until the expenses, which he has incurred, are repaid.
“He possesses this qualified right of pledge, even against the creditors of the owner, if they seek to have the thing sold. He may refuse to restore it, unless they either refund his advance, or give him security that the thing shall, fetch a -sufficient price for that purpose.”
Article 3226 — “Finally, he who has incurred these expenses has a privilege against these same creditors, 'by virtue of which he has preference over them out of the price of the thing sold, for the amount of such necessary charges as he shall have incurred for its preservation. This is the privilege in question in. the present paragraph.”
The appellant bases its claim under Articles of the Code of - Practice, which follow, and the provisions of Act No. 284 of 1938, LSA — RS 9:4601.
Article 722 — “The creditor, by the mere act of seizure, is invested with a privilege on the movable and immovable property thus seized, which entitles him to a preference over other creditors, unless the debtor has become bankrupt previous to the seizure.”
Article 723 — -“When several successive seizures are made of the same property, the creditors making them are entitled to a preference over other ordinary creditors, according to the order of their seizures.”
Article 724 — -“Provisional seizures (attachments) and sequestration give no privilege to those who have made them, until they have obtained a judgment and order of execution on the property sequestered or provisionally seized.”
Act No: 284 of 1938 reads: “Any person, association of persons or corporations operating or conducting the business of, or having the occupation of, draying, hauling or trucking, shall have a lien and privilege for his, their or its charges or labor performed upon commodities, equipment, goods, merchandise or machinery of any character by him, them or it so drayed, hauled or trucked, for a- period of ninety days from the date of draying, hauling or trucking or performing such labor, said period to run from the last day such delivery is made .-o.r. labor performed; and shall be entitled, to enforce such lien . and privilege by a writ of provisional seizure; provided, that this lien and privilege shall have no effect against the vendor’s lien or privilege, chattel mortgage previously recorded, or against a bona fide purchaser of such commodities, equipment, goods, merchandise or machinery, to, whom possession of the same has been delivered and for. which the purchase price has been paid, without previous notice to such purchaser of the existence of such lien and privilege.” '
Liens and privileges are strict! juris, and are in derogation of common fights. No consideration of equity can enter into their determination. Boylan’s Detective Agency & Protection Police v. Arthur A. Brown & Co., 157 La. 325, 102 So. 417, and Patterson v. Lumberman’s Supply Co., La.App., 167 So. 471. And they may not be “extended by way of construction to cover situations not clearly intended to be comprehended by them.” Willis v. Mills Tooke Properties, La.App., 42 So.2d 548, 552.
Clearly, interpreting the Articles of the Civil Code applicable, if M. T. Fannaly, Inc. has a privilege it must be based upon a conclusion that it was obliged to incur expenses alleged for the preservation of the bananas, and the acts which it performed were the type of preservation contemplated by the codal articles, resulting in its acquisition of the two species of rights, against the owner, and against his creditors.
The bananas in question were delivered to the intervenor-appellee particularly for the purpose of being quick frozen for their preservation. The appellant knew or should have known this was the purpose of the delivery to the cold storage -plant. It is common knowledge bananas are perishable.
Had the .appellee not performed the acts he did, the fruit would have deteriorated *318 rapidly, 'become worthless, and there would have been no proceeds whatsoever in controversy.
The bananas, immediately upon delivery, while still the property of the defendant, with no notice to M. T. Fannaly, Inc. that the transportation charges had not been paid, were peeled, grated, sugar and acid added and quick frozen and stored, all of which Fannaly or any other depositary of these bananas would have been obliged to do for their preservation. This is true of all perishable fruit, and these bananas to the knowledge of all parties were not for immediate consumption or retail sale but were placed in the possession of M. T. Fannaly, Inc. for the sole purpose of taking the only necessary steps for their preservation. It is not logical to contend that these acts were not a “preservation” as contemplated by the 6th paragraph of Articles 3217 and 3226 of the Revised Civil Code.
Appellant has argued that the facts of this case bring it under the ruling of Coguenhem v. Himalaya Planting & Manufacturing Co., 140 La. 476, 73 So. 301, 306. There Justice O’Niell, while discussing this privilege, stated “The lien or privilege granted by the sixth paragraph of article 3217, R.C.C., and more particularly by article 3226, R.C.C., to secure debts incurred for the preservation of a thing, was not intended to apply to debts incurred in converting raw material into a manufactured product.”
We cannot agree with this contention. The commodity finally seized and sold in the present case was still bananas and was admitted by both parties to be the same bananas hauled by plaintiff and placed in possession of intervenor. It is immaterial that Fannaly was to be paid for doing this service. His lien came into being under the law as soon as he had taken the necessary steps for preservation. Had Fannaly failed to carry out his agreement for the preservation of the bananas, he would most assuredly have been liable. These bananas had not been converted into syrup nor extract, nor were they a finished, new, manufactured product converted from raw materials in the same sense that the sugar cane in the Coguen-hem case was converted into a new substance. The addition of sugar and acid to the raw fruit, which remained raw after the process was completed, was a necessity for their preservation, as well as the refrigeration and storage under proper conditions.
The contention of the appellant that by the mere fact of the writ of attachment that it acquired a lien which would prime other liens against the attached property is not sound under the facts in this case, for intervenor and appellee enjoyed a lien on the property in question which came into being at the moment that he processed the bananas in order to preserve them, which was prior to the seizure under the writ of attachment.
Appellant admits that Fannaly is entitled to a priority and preference for the amount which he claimed for storage on the bananas. It seems rather inconsistent to admit that Fannaly has a lien for storage and deny his lien for the amounts expended in order to preserve these bananas. It is shown that these bananas are in cans which were furnished ■by the intervenor. Had the bananas not been placed in these cans, they could not have been preserved nor placed in storage under the proper temperatures. The same argument is applicable and logical to the other steps which the record shows were necessary for the preservation of these bananas.
We do not think that Act No. 284 of 1938 changes the provision of the codal articles and it is our opinion that intervenor has a lien and that it primes that of plaintiff-appellant.
Judgment affirmed.