## Succession of John S. Caldwell.

In an attachment suit, if the judgment does not decree that the plaintiff shall be paid by privilege out of the proceeds of the property attached, it will be regarded as an ordinary judgment.

The confidential and head clerk and manager of a bar-room and eating-house, has a privilege for his wages on the movables of the establishment.

W. had charge of the ten pin alleys, and received the money paid at them during the day, and made his returns when they were closed. If this occupation did not give him a privilege as an agent under articles 3158, 3181, 3219 and 3221 of the Code, yet it entitles him to be classed with servants, and as such gives him a privilege.

The Sheriff was sued for the value of certain movables seized and sold by him under a number of attachments. In his answer, he called on the attaching creditors to defend him and asked that they might be made parties to the suit, so that if judgment was rendered against him, he might have judgment over against them. All the creditors but one appeared and justified the seizure. *Held :* that the fee paid by the Sheriff to counsel for defending the attachment, was a claim to be paid by the attaching creditors.

APPEAL from the Fourth District Court of New Orleans, *Reynolds*, J. *Bonford* and *Finney*, for *Foley*. *Bayne & Magne* and *Koonts* and *Hoffman & Ogden* and *Cohen*.

*Bonford & Finney* contended that "there was no necessity to insert in the judgment in an attachment suit a clause affirming, or recognizing the creditor's rights under the attachment," and cited C. P. 265, *Tufts* v. *Carradine*, 3, An. 430. *Harmon* v. *Paul Juge, fils, et al.*, 6 An. 768. *Holmes* v. *her Husband*, 9 Rob. 118.

*Gustine* v. *the Bank of Louisiana*, 10 Rob. 418. Sergeant on Attachment, p. 20. *Ines* v. *Sturgis*, 12 Metcalf, 462. *Daveport* v. *Tilton*, 10 Metcalf, 320.

EUSTIS, C. J. This appeal is taken from a judgment of the Court of the Fourth District of New Orleans, rendered on a tableau of distribution filed by the curators of the succession.

*J. S. Foley*, one of the appellants, is a creditor of the succession by virtue of a subrogation to the rights of *J. & G. Forbes*, plaintiffs in two certain suits commenced by attachment in the Third District Court of New Orleans, against *Caldwell as an absentee.* One of these judgments, to wit: No. 3805, for $1356 81 cts., was opposed by *Henderson & Gaines*, subsequent attaching creditors, on the ground that no privilege had been given to the plaintiffs by that judgment. The District Judge placed *Foley* as an ordinary creditor on the tableau, without any privilege or right of priority, and from this decision *Foley* has appealed.

The judgment is in the common form of personal judgments. It decrees that the plaintiff recover from the defendant the sum of $1356 81 with interest and costs, with a stay of execution on a portion until the 16th of July instant.

We think the usual practice in rendering judgments in attachment suits, is to make provision for the right of the party on the property attached. From this practice, we think there would be no propriety in deviating. The present case strongly illustrates the reason and necessity of some such provision in the judgment, inasmuch as by the Sheriff's return to the writs of attachment, there were no less than twenty-two conflicting attaching creditors.

The case of *Harmon* v. *Juge*, 6th Annual Rep. 768, referred to by the counsel for the appellant, we think, is in affirmance of this practice. In all the judgments under review there, provision was made in them for satisfaction out of the property attached. We find nothing in the other cases referred to by counsel, which is in conflict with this view of the subject. The forms of judgment under the attachment laws of other States and the systems of law which prevail there and in England,—so different from ours in the whole doctrine of privileges —afford no grounds for changing our own. We think, therefore, the District Judge did not err in considering the appellant as an ordinary creditor of the succession, and so decreeing.

*Foley*, the appellant, has also objected to the allowance of two privileged claims, those of *Turnbull* and *Wooster*, each of whom are judgment creditors. The objection is against their privileges. The District Judge allowed the privileges under the articles 3158 and 3181, 3219 and 3221.

*Turnbull*, it is shown by the testimony, was the confidential and head clerk and manager of the establishment of the deceased, which consisted of a bar room and eating house known as the Phœnix House, in St. Charles street. We think the privilege attached to his wages as a clerk or agent of that sort.

*Wooster* had charge of the ten pin alleys, and received the money paid at them during the day, and made his returns when they were closed. If this occupation did not give him a privilege as an agent under the articles cited, we are of opinion that it is included within the class of servants which is more comprehensive in the sense of the Code, and authorizes the privilege allowed.

*John L. Lewis* is also an appellant from a disallowance of a claim of five hundred dollars for professional services, expended by him in the suit of *Miles Judson* against him as Sheriff.

This claim is presented in an irregular form, the amount not being in the hands of the curator for distribution; but as the parties have joined issue and tried it in this form, and have so argued it in this Court, we see no objection to its being

adjudicated upon, but without receiving the countenance of this Court as a precedent of practice.

The amount of five hundred dollars was paid by *Mr. Lewis*, who was the Sheriff who made the seizure of the establishment of the Phœnix House, for professional services, in defending the suit of *Miles Judson* against him, in this Court and the District Court. The amount of this fee is not disputed, but the right to charge the same to the succession is disputed.

This appellant offered in evidence the receipt for the five hundred dollars, the proceedings in the case of *Judson*, and the amount of the nett proceeds of the sales of the property attached, amounting to $4,788 05.

The suit of *Miles Judson* in which this expense of five hundred dollars was incurred, was instituted against the Sheriff for the recovery of the liquors, movables and fixtures of the Phœnix House, taken possession of by him, or for their value, being the sum of five thousand dollars, and the sum of one hundred dollars per day for the time the plaintiff was kept out of the property; and also the further sum of five hundred dollars for the trespass and alleged seizure, &c. *Judson*, the plaintiff, claimed the property under an act of sale from *Caldwell*, made previous to the seizure. The District Judge gave the plaintiff the sum of $4,400, to be paid out of the proceeds of the property attached.

This Court reversed the judgment of the District Court, and gave judgment for the defendants, and directed the proceeds to be distributed among the creditors, under the order of the Court from which the first suit of attachment emanated.

When the suit was at issue the Sheriff in his answer called upon the attaching creditors to defend him, and inasmuch as the several attachments—twenty-two in number—were from the five District Courts of New Orleans, he asked that they might be made parties to his suit, and their rights upon the property therein be adjudicated upon, and for judgment over against them in the event of the plaintiff's recovering. The creditors with one exception appeared and pleaded avouching the legality of the seizure by the Sheriff, and the responsibility of the Phœnix House movables to their several attachments.

The movables in the meantime had been sold under a consent of parties, and it does not appear that any effort was made to charge the Sheriff personally with damages.

It appears also that the Sheriff was one of the appellants to this Court, and on the minutes of the 15th of December, 1851, his counsel was one of those who argued the cause, having filed a brief for his client.

We think, under the circumstances, that the Sheriff had the right to employ counsel at the expense of the attaching creditors, and that they were bound to indemnify him, having virtually made his doings their own. It is true they had their own attorneys employed, and the difficulty arises from a want of mutual understanding on this point. We cannot distinguish this case from that of *Stewart* v. *Lapsley*, recently decided by this Court. The only difference between the two cases is, that in that case the Sheriff had an indemnity bond from the seizing creditor; in this case the creditors adopt and sustain the acts of the Sheriff.

It is therefore decreed, that the judgment of the District Court on the tableau of distribution be affirmed, with the exception of that part directing the curators to account for the sum of five hundred dollars retained by *John L. Lewis*, late Sheriff, for counsel fees paid in the case of *Miles Judson*, and discharging the same, which is reversed, and the said sum allowed to the said *John L. Lewis*, as claimed by him, with costs, and that the costs of this appeal be paid one-half by *Foley*, appellant, and the other by the succession.

ON an application for a rehearing, the following judgment was rendered:

It is ordered that the decree rendered in this case on the 10th of January last, be modified so as to read as follows: It is therefore ordered, adjudged and decreed, that the judgment of the Court below on the tableau of distribution be affirmed, with the exception of the part directing the curators to account for the sum of five hundred dollars retained by *John L. Lewis*, late Sheriff, for counsel fees paid in case of *Miles Judson*, and disallowing the same, and the part directing *L. L. Wooster* to be placed among the attaching creditors, which are reversed; and that *L. L. Wooster* be paid his claim in the rank recognized on the tableau—the sum of two hundred and seventy-four and 41-00 dollars—and that said *J. L. Lewis* be allowed five hundred dollars, as claimed by him, and costs. It is further ordered that the costs of this appeal be paid one-half by *Foley*, appellant, and the other half by the succession.