PROVOSTY, J.
Tbe plaintiff, Labarre, brought a jactitation suit for tbe timber upon a certain tract of land, and tbe intervener, tbe Baker-Wakefield Company, intervened in tbe suit, instituting a jactitation suit for tbe same timber. A jactitation suit does not involve title, unless tbe defendant, acknowledging plaintiff’s possession, sets up title; in wbicb case -tbe suit is converted into a petitory action, with defendant as plaintiff and plaintiff as defendant. In tbe present suit tbe defendant denied that either tbe plaintiff or the intervener had possession; and, in tbe alternative in tbe event tbe court should bold that plaintiff or intervener did have possession, but not otherwise, set up title. Plaintiff and defendant made a compromise, in wbicb it was agreed that plaintiff’s suit should be dismissed; and plaintiff’s suit was accordingly dismissed. Tbe contention was then made that this dismissal of plaintiff’s suit carried with it the intervention; but this court, on appeal, held otherwise, and remanded tbe case for the trial of tbe intervention as if it bad been an independent jactitation suit. 126 La. 982, 53 South. 113. This trial was bad; tbe sole question at issue, and tried, being that of intervener’s having possession or not. Tbe question of title was not involved. Tbe trial court found that intervener bad possession. Tbe defendant took a suspensive appeal to this court; and this court found that intervener did not have possession, and dismissed tbe intervener’s jactitation suit.
Three years after tbe intervention bad been filed, the matter being then pending on tbe suspensive appeal taken by tbe defendant, tbe attorneys of the intervener notified tbe attorneys Of defendant by letter that intervener would proceed to cut and remove tbe timber unless enjoined by defendant. To this letter tbe attorneys of defendant answered that the title to tbe timber was in litigation between tbe parties and that if intervener did as threatened it would be held to tbe highest damages. To that answer the attorneys of intervener replied, as follows:
“We' cannot agree with your position. The entire purpose for which our client purchased this quarter section will be defeated if he has to dismantle and remove his sawmill from its present location without first cutting this timber. As you know, they bought in perfect good faith, from those who had possession under title from the state for 60 years, and they paid full price.-
“We do not believe that there is any color of right in your claim to the land, and the court has so decided. We cannot prevent your appealing to the Supreme Court, but if we wait and lose the profit which our mill should make on this timber, who is going to pay us for the loss? Not your clients; they will say that they never prevented our proceeding to cut the timber, and that we should have done so. Now if your claim is valid as you claim it is, the courts are open to you to enjoin our cutting the timber. The remedy is simple and will effectually stop us.
“Besides, we have already deadened in good faith a large part of this timber, and that should be removed to prevent deterioration.
“No owner or possessor of land can prevent a suit being filed against him for the land, on however fictitious a claim, but the pendency of such a suit does not prevent his deriving the benefit of his possession, and putting the property to its proper and legitimate use. We have made every effort to effect an arrangement with your clients by which both parties would be protected from ultimate loss, however the suit is decided, but as you well know we have not been able to get your clients to signify their willingness to any arrangement whatever.
“Now if you really believe that your claim to the land is a valid and just one, all that we ask is that you show the faith that is in you by enjoining us from cutting this timber. That is the remedy which the law provides, and if you fear to resort to it, it looks as if you have not much faith in your claim.
*857 “We still think that the parties should get together on an arrangement which would allow ■our client to cut the timber, and provide a price to be paid your client in case he should finally win the suit, which we regard as a very unlikely possibility.”
These efforts at a modus vivendi proving fruitless, the intervener proceeded to cut and remove the timber. Thereupon the defendant filed a petition in the trial court alleging the pendency of the said suspensive appeal, and that it involved the title to the timber, and that the intervener was removing the trees and manufacturing them into lumber, laths, and shingles, and that a writ of judicial sequestration should issue. But, strange to say, the defendant did not ask that the trees be sequestered, but, specifically, that the lumber, laths, and shingles as already or thereafter manufactured be sequestered.
In other words, the defendant seems to have been willing that the trees should be removed and converted into lumber, laths, and shingles for its benefit. No bond was offered to be given, and none was given. The court made the order for sequestration as prayed; and the intervener went on removing the trees and converting them into lumber, laths, and shingles; and the sheriff sequestered the product from day to day as it was manufactured.
The intervener moved to dissolve the sequestration; and prayed for $500 damages as attorney’s fees for dissolving it and for other damages; and, at the same time, bonded the sequestration. In the motion to dissolve, the grounds for dissolution are stated as follows:
“(1) That no citation herein and no copy of said petition have been served on mover.
“(2) That no bond to obtain said sequestration has been furnished by said BurtonSwartz Cypress Company as required by law.
“(3) That the writ of sequestration has now expired, -in accordance with its terms ; the said cause having been finally decided by the Supreme Court.
“(4) That the sheriff has seized a large quantity of lumber on petitioner’s yard, some of which perhaps came from the northwest quarter of 54, T. S. R. 15 Ef., but the greater part of which did not come from said quarter, and not a single piece of said lumber can be positively identified as having come from said quarter.
“(5) That the effect of said seizure is practically to tie up mover’s lumber yard, and prevent its carrying on its business of a vendor of lumber because the lumber seized by the sheriff is piled on the top of other lumber not seized, and the sheriff will not move same or allow mover to move the lumber not seized.”
[1] Of these grounds we need consider only the third. The sequestration was prayed to be issued, and it issued, to have effect only “until the final determination of this case on appeal.” When, therefore, the judgment on the appeal became final, the sequestration terminated proprio vigore. The situation would have been different if the effect of the judgment on the appeal had been to recognize that the defendant was in possession. But such was not the case. The whole effect of the judgment was to decree that the plaintiff was not in possession. The question of defendant’s possession was not involved in the appeal, and was not considered. Had the court considered it, the result would have been that the defendant would have been decreed not to be in possession. As a matter of fact, the court so found and so declared; but its attention having been attracted to the fact that defendant’s possession, vel non, was- not an issue in the case, and that the passing upon that question, therefore, was not pertinent to the case, it struck out that part of the decision. 130 La. 134, 57 South. 655. This does not appear from the published report of the decision, but does appear from the record in the case.
[2] This fact that defendant’s possession was not at issue and was not, either expressly or impliedly, decreed, differentiates this case completely from that of Jennings-Heywood Syndicate v. Houssier-Latreille Co., 116 La. 1053, 41 South. 255, where in a possessory action a judicial sequestration was had while the ease was on appeal, and it was *859 held that the judgment on the appeal did not have the effect of dissolving the sequestration. 'In that case, the issue was not, as in the instant case, restricted to the bare question of whether plaintiff was or not in possession; but involved also the right of defendant- to possession; and the result was not, as in the instant case, simply a declaration that plaintiff was not in possession, but it was a decree that defendant was in possession and as such entitled to all the rights of a possessor, including, necessarily, those which the sequestration was designed to conserve.
“The judgment,” said the court, “left the Jennings-Heywood Syndicate in possession of the tract in controversy, and by necessary implication affirmed its right for the time being to exploit the premises for oil and gas. * * * The syndicate’s right of possession attached to the oil as a product of the soil.”
In other words, in a possessory action the issue is as to which one of the litigants is in possession and entitled to the rights of a possessor; whereas, in a jactitation suit, unless the defendant in his answer admits plaintiff’s possession by setting up title and thereby instituting a petitory action, the issue is restricted to the bare question of plaintiff’s having possession 'or not. The question of defendant’s having possession or not is not at issue and is not tried. The application which the defendant made to this court on the appeal to strike oilt of its opinion that part declaring that it was not in possession is conclusive on that point. In the Jennings-Heywood Case, if the sequestration had come up with the main suit, to which it was merely ancillary, the court would have decreed the property sequestered to be delivered to the syndicate in virtue of its right of possession. But in the instant case, if the -sequestration had come up with the main suit, the court could have made no such decree. All it could have done would have been to declare that the suit was at an end; and that the sequestration, which was merely ancillary to it, not an independent- suit but a mere incident to the main suit, was also at an end. It could not, as in the Jennings-Heywood Oa-se, have ordered the sequestered property delivered to one of the parties, because neither party had been decreed to be in, possession and to have the rights flowing from legal possession.
The defendant’s learned counsel argue the case as if the appeal to this court had involved defendant’s right of possession or else the title to the property; whereas, it distinctly did not. The issue involved in said appeal i-s stated with clearness and precision in the prayer of defendant’s answer to the intervention:
“Defendant prays that plaintiff in intervention’s demand be rejected for want of possession real and actual and said intervention dismissed with costs. With full reservation of above and without in any manner waiving the same, and only in case that the court concludes that plaintiff in intervention is in possession of the land and timber and in the alternative, defendant further answering pleads that defendant acquired the property as * * * (etc., setting- up title).
“Wherefore, premises considered, respondent prays that the issue to possession interest of said land and timber by the plaintiff in intervention be tried primarily and disposed of before the trial of the other issues in this case, and by reason of want of possession of said land and timber by interveners that said intervention be dismissed with costs.
“With reservation of this and under protest and only in the event that the court holds that intervener is in possession, and in that case and in the alternative, defendant prays that it be declared and decreed to be the owner of said land- and timber and intervener’s demand be rejected and pleas of prescription therein be maintained.”
Nothing can be more evident than that when, in pursuance of this prayer, the intervention was dismissed because of intervener’s not having possession, there remained nothing' further to be decided or decreed; and that the suit terminated wholly and completely; that there remained absolutely nothing further to be done in it; and that all ancillary and incidental proceedings terminated with -it. Neither the appellate nor the trial court could possibly *861 have gone on and adjudged anything further in the cause. The sequestration which was a mere ancillary, incidental proceeding fell to the ground of its own weight; there being no longer anything upon which it could rest. Citation of authority can hardly be necessary for so plain a proposition as that a sequestration is a mere ancillary proceeding, an incident to a main suit; however, the point has been again and again decided. Thus; Martel v. Jennings, 115 La. 452, 39 South. 441:
“Suit having been closed by final judgment, no further proceedings could be had in it, except those required for the execution of the judgment.”
“The remedy is a new suit, and if necessary sequestration pendente lite.” See page 455, last paragraph.
Succession of Platz, 122 La., bottom of page 27, 47 South. 124:
“It [the sequestration] issued as aneillary_ to and in aid of the precise demand then being made by plaintiff. * * * It was incidental thereto, and, when that demand failed, the incident fell as a consequence with it.”
Jennings v. Houssiere, 117 La. 961, 42 South. 467:
“A writ of sequestration issued in a possessory action cannot be maintained until the ownership is decided, because the question of ownership cannot be determined in a possessory action.” Syllabus.
See, also, Crowell & Spencer Lbr. Co. v. Duplissey, 130 La. 837, 841, 58 South. 590.
The judgment dismissing the suit of the intervener was self-executory. It left nothing to execute. The sequestration, which had had as its basis the alternative demand of the defendant to be decreed to be the owner of the property, no longer had any basis, and therefore fell of its own weight. Had that demand been tried and been decided in favor of defendant, the decree would have carried with it the maintenance of the sequestration, as in the Jennings-Heywood v. Houssiere-Latreille Case, supra). But that demand was never propounded except in the alternative, only in the event the intervener was decreed to have possession; and, inasmuch as the intervener was not so decreed, but, on the contrary, was decreed not to have possession, said alternative demand never came into the suit; the legal situation stood as if it had never been made at all; legally speaking, it was never made; legally speaking, the sequestration, never had any basis. It was, from first to last, conditioned upon the intervener being decreed to be in possession and upon the question of title being gone into, and that contingency never came about.
Ordinarily an intervention does not continue as a separate suit after the main suit has terminated. But, on the first appeal, this ease was held to be an exception to that rule. 126 La. 982, 53 South. 113. The compromise made by plaintiff and defendant, and the judgment founded upon it, of course, decided nothing, except as between the parties to it. On this previous appeal, the court said:
“As relates to the compromise made between plaintiff and defendant terminating the litigation between them: The intervener having a standing in court, as we have decided, - it follows that no compromise can be entered into between plaintiff and defendant affecting his rights.”
[3] The sequestration having been ex officio, the act of the court and not of the defendant, no damages can be allowed.
Judgment affirmed, at cost of appellant.