(92 South. 355)

No. 24889.

SWIFT & CO., Limited, v. LEON CAHN & CO. et al.

(April 24, 1922. Rehearing Denied by Division C June 8, 1922.)

(Syllabus by Editorial Staff.)

1. Appeal and error ⬅168—Waiver of appeal only available to appellee before judgment.

The waiver of an appeal could only be taken advantage of before judgment on the appeal, and only by the appellee.

2. Appeal and error ⬅1207(1)—Judgment on appeal takes place of judgment of trial court.

The judgment on an appeal, when recorded in the trial court, stands in place of the judg-

[1] Ante, p. 831.

ment of the trial court, and the legal situation is as if the judgment so recorded had been originally rendered by the trial court.

3. Principal and surety ⬅145(1)—Suretyship; attachment maintained as to whole world when maintained as to the party to the suit.

Where an attachment was maintained on appeal contradictorily with the only party to the suit, it was maintained as to the whole world, including the surety on a forthcoming bond.

4. Appeal and error ⬅154(3)—Appeal from dissolution of attachment not waived by going on with main case.

An appeal from a judgment dissolving an attachment was not waived by proceeding to judgment on the main demand.

5. Attachment ⬅332—Judgment merely maintaining attachment, without more, sufficient to support action on forthcoming bond.

A judgment on appeal maintaining an attachment was sufficient to support an action on a forthcoming bond, though it did not decree that plaintiff should have a privilege, and order that the property be seized and sold, these being consequences following the maintenance of the attachment by operation of law, in view of Civ. Code, art. 3186, defining privilege, and Code Prac. art. 722, providing that the mere act of seizure entitles the attaching party to a privilege.

6. Customs and usages ⬅10—Custom cannot change law as to sufficiency of judgment maintaining attachment.

The question as to the efficacy of a judgment on appeal maintaining an attachment without decreeing that plaintiff should have a privilege, and ordering the property attached to be seized and sold, is not one upon which custom could make the law.

7. Attachment ⬅332—Judgment maintaining the attachment efficacious, though rendered after judgment on main demand.

Code Prac. art. 154, providing that the incidental demand must be decided at the same time with the principal, must be read in connection with article 258, authorizing defendants to provoke a separate judgment by motion to dissolve an attachment; and, where such separate judgment was rendered dissolving the attachment, and an appeal taken, it was not true that there could only be one judgment in the case, and the judgment on such appeal maintaining the attachment was efficacious though rendered after the judgment on the merits.

**8. Appeal and error ⬥⟳446—Appeal divests trial court of jurisdiction to render judgment.**

By an appeal from a judgment dissolving an attachment, the trial court was divested of all jurisdiction over that part of the case, and could not have rendered any judgment concerning it in rendering judgment on the main case.

Appeal from Twenty-Third Judicial District Court, Parish of St. Mary; Percy Saint, Judge.

Action by Swift & Co., Limited, against Leon Cahn & Co., and others. From a judgment for defendants, plaintiff appeals. Judgment set aside, exception overruled, and case remanded.

See, also, 139 La. 558, 71 South. 849.

Foster & Boatner, of Franklin, and Monroe & Lemann and Walter J. Suthon, Jr., all of New Orleans, for appellant.

Caffery & Brumby, of Franklin, for appellee American Surety Co. of New York.

Borah, Himel, Bloch & Borah, of Franklin, for appellee Leon Cahn & Co.

By Division A, composed of Chief Justice PROVOSTY and Justices OVERTON and LECHE.

PROVOSTY, C. J. Plaintiffs brought suit on a promissory note against one Bonvillain, and, by a supplemental petition, filed one month thereafter, sued out an attachment, and seized certain sugars in the possession of Bonvillain, on the allegation that Bonvillain was giving an unfair preference to one of his creditors, Cahn & Co., by shipping his crop of sugar to Cahn & Co. as fast as he manufactured it. Cahn & Co., claiming that the sugars were pledged to them, applied to the court by motion to be allowed to bond them, under the provisions of Act 51, p. 92, of 1876; and, the court having so ordered, they furnished bond, with their present codefendant, the American Surety Company, as surety, conditioned that—

"If Leon Cahn & Co. shall deliver said sugar to the sheriff when lawfully required, then this obligation to be void, or else to remain in full force."

This was on December 8, 1913. On that same day Bonvillain filed a motion to dissolve the attachment. From a judgment granting that motion, Swift & Co. appealed suspensively, and duly perfected this appeal by filing bond, and duly lodged the transcript of appeal in this court. After the appeal had been thus perfected Swift & Co. proceeded to take judgment by default against Bonvillain in the main suit. This judgment simply condemned Bonvillain to pay the debt. It made no mention of the attachment. On the said appeal this court maintained the attachment, but in its judgment made no mention of a privilege, nor of an order for the seizure and sale of the property attached. 139 La. 558, 71 South. 849.

The original petition in the suit was filed on November 10, 1913; the supplemental petition, praying for the attachment, was filed on December 6, 1913. The judgment dissolving the attachment was rendered on December 19, 1913. The appeal from it was taken and perfected on that same day. The judgment on the merits was rendered on January 12, 1914. That on the appeal was rendered in May, 1916.

Swift & Co. caused this judgment on the appeal to be recorded in the trial court, and then filed the present suit. After allegation of the facts hereinabove stated, the prayer is that Cahn & Co. and said surety be condemned to deliver the said sugars to the sheriff, as conditioned in said bond, or else pay the said judgment against Bonvillain. An exception of no cause of action was sustained below, and Swift & Co. have appealed.

The defendants contend that from the said facts it does not appear that they have ever been "lawfully required" to deliver the attached property to the sheriff, as condition-

ed in the said bond; that they could have been thus "lawfully required" only if the attachment had been maintained, and a lien and privilege on the property had been decreed in favor of plaintiffs, and the property ordered to be seized and sold to satisfy plaintiffs' judgment against Bonvillain, and that this does not appear to have been done.

In support of this contention the defendants argue as follows:

First. That the maintenance of the attachment on the appeal was ineffectual, or to no purpose, because, by proceeding with the case on the merits in the trial court, plaintiffs waived the appeal, since this going on to trial on the merits was inconsistent with the appeal, and was voluntary on the part of plaintiffs.

Secondly. The judgment rendered upon the appeal was inefficacious for "lawfully requiring" the property attached to be delivered to the sheriff, because it did not decree a lien and privilege on said property in favor of plaintiffs and order the property attached to be seized and sold to satisfy plaintiffs' claim, but simply maintained the attachment.

Thirdly. That, even if said judgment had so decreed and ordered, this would not have sufficed, or been efficacious, because such decree and order could have been efficaciously made, and the attachment efficaciously maintained, only in and as part of the final judgment on the merits, since there cannot be two judgments in a case, but only one.

1. Counsel realize that, after an appeal has been heard in the appellate court, and final judgment rendered in it, the contention that it was waived comes rather late; but they say that defendants are not bound by this judgment, since they were not parties to the appeal.

[1] We do not see that the fact that defendants were not parties to the appeal can make any difference; since the fact remains that the waiver of the appeal could have been taken advantage of only before judgment on the appeal, and was not thus taken advantage of. Moreover, the only person who could possibly have had a standing for taking advantage of this waiver—if waiver there was—was the appellee, Bonvillain; and he did not do so.

[2, 3] That the judgment of the trial court was annulled on the appeal, and that on the appeal the attachment was maintained, are stubborn facts in the case. Defendants cannot controvert them, and do not. Now the judgment on an appeal when recorded in the trial court stands in place of the judgment of the trial court, and the legal situation thereafter is as if the judgment so recorded had been originally rendered by the trial court; so that the legal situation in this case is as if the attachment had been originally maintained by the trial court. Defendants' contention, therefore, that it has not been maintained as to them, is simply not to the purpose. It was maintained contradictorily with the only party to the suit. It was maintained in the only way it could possibly have been maintained, and therefore was maintained as to the whole world.

[4] However, if this question of waiver vel non were still open, we should have no difficulty in concluding that there was no waiver. Defendants would deduce such waiver from the supposed fact that the prosecution of the suit on the main demand to judgment was inconsistent with the prosecution of the appeal on the attachment. This supposed inconsistency they deduce from the supposed fact that the judgment on the main demand closed the case, whereby the incidental demand of attachment found itself, as it were, up in the air, with nothing to stand on, and necessarily fell to the ground.

As bearing out that argument they cite the cases of Labarre v. Burton-Swartz Cypress Co., 133 La. 854, 63 South. 380, and

Martel v. Jennings, 115 La. 451, 39 South. 441.

The first of these cases was a jactitation suit, in which the defendant denied that plaintiff was in possession, and, in the alternative, in the event the court found plaintiff to have had possession, set up title, and, subsequently, on the strength of this allegation of title, sued out a sequestration. The court having found that the plaintiff did not have possession, the alternative allegation of title never came into the case, and the sequestration, which was based solely on it, never came into the case. And so the court held.

In Martel v. Jennings, 115 La. 451, 39 South. 441, the plaintiff sought to graft upon a terminated suit a new suit in sequestration; and the court held that this could not be done.

Manifestly these decisions have no bearing upon the question of inconsistency between proceeding with a case on the merits in an attachment suit, and, proceeding with an appeal from a judgment which has dissolved the attachment.

That the taking of judgment on the main demand is not inconsistent with prosecuting the appeal on the attachment has been expressly decided by this court. Wickman & Pendleton v. Nalty, 41 La. Ann. 284, 6 South. 123.

Our system of procedure would be infirm indeed if a plaintiff, whose attachment has been summarily dissolved, and who has appealed suspensively, should be in the predicament of having either to relinquish his appeal or else wait until final judgment on the appeal before proceeding to take judgment on the main demand against his debtor. There can be no reason for such a rule. In the present case the plaintiff would have had to wait from December, 1913, to May, 1916, before proceeding with the case on the main demand. In the case of Bank v. Winn, 134 La. 639, 64 South. 495, this court said:

"The pendency * * * of the rule to dissolve the attachment constituted no obstacle to the trial of the case on the merits."

The situation of one part of a case being pending in the Supreme Court while the other part is proceeded with in the trial court is not at all uncommon in our practice. See State ex rel. Fitzpatrick v. Ellis, 106 La. 715, 31 South. 313, and cases there referred to.

Why should not a plaintiff, who has appealed from a judgment dissolving his attachment, proceed to obtain judgment on his debt, and make this judgment good irrespective of the attachment by seizure of the property that had been attached or of any other property he may have a chance to get hold of? The contrary doctrine would make the attachment after its dissolution operate temporarily as an injunction, and as a hindrance, even though by rights it should have been maintained.

[5] 2. If, in the present case, the judgment on the appeal was defective in not having decreed that plaintiffs should have a privilege, and in not having ordered that the property attached be seized and sold to satisfy plaintiffs' claim, the fault was that of the court. But there was no fault. No good reason can be assigned why a judgment maintaining an attachment should decree that a privilege has resulted in favor of the attaching creditor from the fact of the property having been attached, or that the property attached may be or is to be seized and sold to satisfy the claim of the attaching creditor. These are things which go without saying—consequences which by operation of law follow the maintenance of the attachment—and hence need not be adjudged and decreed. The attachment being maintained, the sheriff would be powerless to release the property attached, and the property, being in gremio for the very purpose of satisfying the claim of the attaching creditor, can be seized and sold under fi. fa., without any

special authorization from the court to that effect.

In the case of Perret v. Coleman, 115 La. 814, 46 South. 176, where a sequestration had been maintained, and nothing said of privilege upon or ownership of the property sequestered, the court said:

"This was in effect to decree that the property should be restored to the plaintiffs, and held to respond to the moneyed demands of their judgment."

If this is true in sequestration where the matter before the court involves two issues, first, ownership, vel non or privilege vel non, and, second, good grounds vel non for sequestration, and where, therefore, there might perhaps be some reason for a double decree, how much truer it is in attachment, where there is but one issue—good grounds or not for attachment.

Counsel invoke the earlier cases of Succession of Caldwell, 8 La. Ann. 42, and Nalle v. Baird, 30 La. Ann. 1148, as announcing a different doctrine. These earlier cases must be considered as having been impliedly overruled by Perret v. Coleman in so far as conflicting.

The only reason assigned in Succession of Caldwell is as follows:

"We think the usual practice in rendering judgments in attachment suits is to make provision for the right of the party on the property attached. From this practice, we think there would be no propriety in deviating."

[6] Here the court founds itself exclusively upon the impropriety of deviating from a supposed practice or custom. No evidence was produced in the present case of the prevalence of such a custom or practice, and, if such evidence had been produced, we should not have been at liberty to consider it, since the point in question is not one upon which custom could make law.

We do not see why the courts should be required to do so useless a thing as to set forth in their decree the legal consequences which must follow the judgment they render upon the issues in the case. Such useless verbosity should be repressed, not encouraged.

The utter uselessness of adding to a decree maintaining an attachment a decretal of these consequences is illustrated by the fact that the court would be powerless to arrest these consequences if it desired to do so. A decree which would maintain an attachment, and then go on and deny to the attaching creditor a privilege, and deny him the right to seize and sell the attached property, would be simply absurd. No judge who was not a zany would perpetrate such a monstrosity.

And this utter uselessness is further illustrated by the fact that in an attachment suit the matter of privilege vel non plays no part. It enters into the issues of the suit in no way, shape, or form. For making a decree concerning it, the court must go outside of the issues, and, in a sense, outside of the suit itself.

"Privilege is a right which the nature of a debt gives to a creditor, which entitles him to be preferred before other creditors." C. C. art. 3186.

What in the world, then, has the question of privilege to do in a case where there is but one creditor; and a creditor at that who is not asking to be preferred to any other creditor, but simply to have judgment against his debtor, and, incidentally, to have the property of the debtor held in gremio in order that the debt sued for may be satisfied out of it. The question of privilege vel non can be of interest only when a conflict arises between creditors, and this can be only after the property has been seized under fi. fa., or when some creditor has intervened in the attachment suit, and set up a privilege, or other right, superior to the privilege resulting from the attachment sei·

zure. And, be it noted, when such a conflict arises, the attaching creditor, for entitling himself to a privilege, must rely, not upon the fact that a decree has been rendered in the attachment suit awarding him this privilege, but simply, purely, and exclusively upon the bare fact of the property having been attached, and of the attachment having been maintained. The bare fact of his having attached and of the attachment having been maintained entitles him to a privilege ("the mere act of seizure," says article 722, C. P.); and, outside of that bare fact, 10,000 decrees rendered in the attachment suit, or in any other suits to which the competing creditors had not been parties, would be as nothing for entitling him to a privilege.

[7] 3. We do not agree that there can be only one judgment in a case, and that therefore the attachment could have been efficaciously maintained only in the trial court as part of the judgment on the merits.

The reason assigned by counsel for that conclusion is that "We cannot have a judgment on the original petition" (main demand) "and another one on a supplemental petition" (demand for attachment); and that "the incidental demand must be decided at the same time as the principal demand."

No doubt ancillary proceedings, such as attachment and sequestration, must be passed on at the same time as the main demand. This is so because they are part of the suit, and the suit as a whole is submitted for judgment and, necessarily, has to be decided as a whole.

But this can be true only when the suit as a whole is submitted for judgment, not where the incidental demand for attachment or sequestration has been separated from the main demand, and judgment rendered on it separately.

Counsel themselves provoked a separate judgment on the attachment, and they did it by express authority of article 258 of the Code of Practice, and in conformity with the common practice; how, then, can they, with a serious face, say: "We cannot have a judgment on the original petition" (main demand) "and another one on a supplemental petition" (demand for attachment), and that "the incidental demand must be decided at the same time as the principal demand."

Counsel say that by the judgment dissolving the attachment "the trial court did not pass on the question of whether or not the incidental remedy of attachment with a lien and privilege should be allowed plaintiffs as part of the main demand." Counsel mean that, after the attachment had been dissolved, the questions of whether the plaintiffs were entitled to an attachment and whether plaintiffs were entitled to a privilege remained open to be passed on by the court when the case came on to be decided on the merits or main demand.

Counsel are simply mistaken in that regard. These questions were closed by the judgment dissolving the attachment. Surely the question of whether plaintiffs were entitled to an attachment was closed by the judgment dissolving the attachment; and surely all question of a privilege resulting from an attachment is closed by the dissolution of the attachment. This privilege does not result, be it remembered, from the attaching creditor's contract with his debtor. nor from the nature of his debt, but solely from the seizure which he makes under the attachment. C. P. art. 722. With the fall of the attachment the seizure lapses, and with it the privilege to result from it.

In substantiation of their contention that there cannot be two judgments in a case, counsel cite article 154 of the Code of Practice, reading:

"Art. 154. The principal demand must be brought before the court which has the jurisdiction of the case.

"The incidental demand must be decided at the same time with the principal; it is subject to the same jurisdiction as the suit itself."

But that article necessarily has to be read in connection with article 258, which allows the demand for attachment to be tried and disposed of summarily before trial on the merits.

[8] The contention that the maintenance of an attachment can be efficaciously decreed only in the judgment which passes on the main demand is but presenting in another form the argument that to proceed to the trial of the main demand is inconsistent with the prosecution of the appeal from the judgment dissolving the attachment; for nothing can be more certain than that, by the appeal on the attachment, the trial court was divested of all jurisdiction over that part of the case, and hence could not possibly have rendered any judgment concerning it in any way. Counsel will not, and do not, gainsay the proposition that the moment an appeal is perfected by the giving of a bond of appeal the trial court is divested of all jurisdiction over the matters covered by the judgment appealed from. Their idea that the judgment dissolving the attachment did not cover the entire matter of the attachment is the result simply of error. This we have just shown. A striking illustration of the trial court's jurisdiction over the attachment being thus lost while retained over the merits is found in Phelps v. Boughton, 28 La. Ann. 826.

The language of the second paragraph of the said article 154, to wit, "The incidental demand must be decided at the same time with the principal," is broad enough to include all incidental demands; and conservatory writs, such as attachment, sequestration, provisional seizure, and injunction, are incidental demands, and therefore come within the terms of the article. But we may say, in passing, that the necessity for inserting this provision in the Code was not in order that the incidental demand for the conservatory writs here named should have to be passed on at the same time as the main de-

mand. And the proof of this lies in the fact that, if that provision were stricken out of the Code the incidental demand for said writs would still have to be passed on at the same time as the main demand whenever they had not already been passed on summarily before trial on the merits. Therefore, as applying to these conservatory writs, the said provision adds absolutely nothing to what the legal situation would be if it were not in the Code. The necessity for inserting said provision in the Code was to establish a rule with reference to such incidental demands as those named in the article immediately preceding (article 153) as examples of incidental demands—"demands in warranty or in intervention." That this is the underlying idea is indicated by the second sentence of the paragraph, the paragraph as a whole reading:

"The incidental demand must be decided at the same time with the principal; it is subject to the same jurisdiction as the suit itself."

To say of an attachment that it is subject to the same jurisdiction as the suit itself would be not only supererogatory, but so much so as to border on the silly.

After the trial court had dissolved the attachment, it had nothing more to say about it. Its not having mentioned the attachment in its judgment on the merits is therefore insignificant. This differentiates the present case from the cases of Succession of Caldwell, 8 La. Ann. 42, and Nalle v. Baird, 30 La. Ann. 1148, supra, cited by counsel; and hence these cases, even if sound in their said doctrine, would not control the present case.

Confusion has been brought into this case by counsel's discussing it as if Cahn & Co. had intervened in the case and set up some right of pledge or privilege upon the property attached, whereby the question of whether plaintiffs have an attaching creditor's privilege had been raised in the case; but as yet Cahn & Co. have set up no such claim,

and may never do so. Sufficient for the day ought to be the evil thereof; and the evil so far is only as to whether the maintenance of the attachment has placed the principal and the surety on the forthcoming bond sued on under the necessity of putting back under the attachment the property the possession of which was confided to them pending the decision of the question whether the attachment would be maintained or not.

The judgment appealed from is set aside; the exception of no cause of action is overruled; and the case is remanded for trial. Defendants to pay the costs of appeal.

Rehearing refused by Division C, composed of Justices DAWKINS, ST. PAUL, and THOMPSON.