No. 3117

Second Circuit

—

RECEIVERSHIP OF BRYCE CASH STORE, INC.

(Opposition of Traders Securities Company et al.)

—

(November 18, 1929. Opinion and Decree.)
(December 31, 1929. Rehearing Refused.)

—

**366**

P. E. Brown, of Arcadia, attorney for plaintiff in opposition, appellee.

J. Rush Wimberly, of Arcadia, and George M. Wallace, attorneys for Baker Grocery Co., Inc., defendant in opposition, appellant.

I. J. McConathy, of Arcadia, attorney for Arcadia Mercantile Company and for Receiver, appellant.

ODOM, J. A receiver was appointed for the Bryce Cash Store, Incorporated, a corporation, on October 15, 1926, and upon application of the receiver, the court, on January 15, 1927, ordered him to sell at private sale all of the assets of the concern to pay the debts. Having sold the assets of the corporation, the receiver filed his account on which he listed separately the privileged and ordinary claims filed with him, advertised the account and applied to the court for an order to pay the claims as listed.

Among the claims scheduled as privileged was one in favor of the Baker Grocery Company, Inc., for $155.66. The Traders Securities Company, and other creditors, who claimed no privilege and whose claims were scheduled by the receiver as ordinary debts, opposed the account on the ground, as they claim, that the Baker Grocery Company had no privilege and that its claim should have been listed along with those of the other ordinary creditors. On trial of the opposition, all parties being present or duly represented, the district court sustained the opposition and ordered the account amended so as to place the claim of the Baker Grocery Company on the list of ordinary creditors. Hence, this appeal.

The grounds on which the Baker Grocery Company claims that its debt should be paid by preference over the opposing creditors, none of whom claim any privilege, are that previous to the appointment of the receiver it had sued the Bryce Cash Store, and, under proper allegations, had caused the property of its debtor to be attached and had carried its suit to judgment, which judgment maintained the attachment and specifically recognized its privilege, as allowed by law to attaching creditors on the property attached, and ordered it sold to pay the claim by preference.

The Baker Grocery Company did not execute its judgment and have the property sold and counsel for opponents now contends that because it did not execute its judgment, it had no privilege. Counsel's contention is set forth in his brief and we quote therefrom as follows:

"The opposition is based on the allegations that the judgment of the Baker Grocery Company was rendered on an ordinary claim, such as the claims of the opponents are, and that there was no privilege resulting to the Baker Grocery Company by reason of its attachment, because no execution has ever issued on the judgment which sustained the attachment."

And, quoting the last paragraph of the brief:

"There is no authority under the law for a receiver to allow a privilege, as in this case, which is not lawfully created—and a privilege like this cannot be perfected under the laws of this State except through execution."

In other words, counsel for opponents grounds his case solely upon the proposi-

tion that as a matter of law an attachment confers no privilege unless there is execution on the final judgment obtained in such proceedings, and, in support of his contentions, cites Code of Practice, article 724, and Eymar vs. Lawrence et al., 8 La. 38.

Article 724 of the Code of Practice reads:

"Provisional seizures (attachments—see Beck v. Brady, 6 La. Ann. 444) and sequestration give no privilege to those who have made them, until they have obtained a judgment and order of execution on the property sequestered or provisionally seized."

The Code does not say and it cannot be construed to mean that an execution must issue in order that a privilege may exist. It says the seizures confer no privilege in favor of those who have made them "until they have obtained judgment and order of execution." Strictly speaking, an attachment gives no privilege upon the property attached for, as was stated in Beck v. Brady, Brown & Company, 7 La. Ann., p. 1, the attachment may be dissolved or the property bonded and released. But, where the attachment proceedings are carried to final judgment which specifically maintains the writ and recognizes the privilege allowed by law to attaching creditors, the privilege is perfected and dates back to the service of the writ. Harris v. Andrews & Company, 20 La. Ann. 561. The requirements of the Code of Practice, article 724, for obtaining the privilege are met when the Court maintains the writ and recognizes the privilege, which is equivalent to an order of execution. Swift & Co. v. Leon Kahn & Company, 151 La. 837, 92 So. 355.

Counsel in his brief quotes the first paragraph of the syllabus in the case of Eymar v. Lawrence, supra, which reads:

"The creditor who proceeds against the property of his debtor by provisional seizure (attachment) and sequestration, acquires no privilege thereon, until he has obtained a judgment, and execution issues on it."

The syllabus is misleading. What the Court said and all it said on this particular point was this:

"The plaintiff proceeded by provisional seizure, and the 724th Article of the Code of Practice declares that provisional seizures and sequestration give no privilege to those who have made them, until they have obtained a judgment and order of execution on the property sequestered or provisionally seized."

The Court did not hold, as the syllabus would seem to indicate and as counsel now contends, that no privilege exists unless execution under the judgment actually issues, and, so far as we are able to find, it has never been so held nor could it be, because the language of the Code is plain.

Code of Practice, Article 722, provides that the creditor, "by the mere act of seizure is invested with a privilege * * * which entitles him to a preference over other creditors, unless the debtor has become bankrupt, previous to the seizure." It is conceded that there was in this case an act of seizure which was declared by the Court to be valid and was sustained. The Baker Grocery Company was, therefore, entitled to a preference over the other less diligent creditors. The property of the debtor was attached before the receiver was appointed and the privilege, when recognized by the Court,

dated back to the service of the writ. Now was this seizure and the privilege conferred by it divested when the receiver was appointed and took over the property? The answer is, no.

A receiver is but an officer of the Court who acts as trustee for both the creditors and the debtor corporation. He acts, not for himself, but for both and represents each. Property in his hands is in the custody of the law. He is but an agent through whom the Court acts.

Receivership of New Iberia Cotton Mills, 109 La. 875, 33 So. 903;

In re Pleasant Hill Lumber Company, 124 La. 743, 52 So. 1010;

Harvey v. Gartner, 136 La. 411, 67 So. 197, Ann. Cas. 1916D, 900.

The appointment of a receiver sustains the status quo of the corporation, and is meant to preserve and not to cause injury either to the creditors or to the corporation. State v. King, 46 La. Ann. 110, 14 So. 902. His taking over of the property brings about no change of title and cannot prejudice the rights of any creditor. He takes the property as he finds it, burdened with all the liens and privileges which affected it in the hands of the corporation, and to the same extent. He stands in the shoes of the corporation. The order appointing the receiver in this case specifically directed him to take charge of all the assets of the corporation and to hold or administer the same "in such manner as he may be directed by this Court and subject to the further orders of this Court." The property was, at the time the receiver was appointed, in the custody of the sheriff who had taken possession of it under the writ of attachment. Presumably, he surrendered the property to the receiver. But such surrender did not "destroy the privilege resulting from the seizure." Cleveland Steel Company v. Joe Kaufman Company, 155 La. 529, 99 So. 428, 429; Item Company, Ltd., v. Nu-Grape Bottling Company, Inc., 160 La. 975, 107 So. 770; Item Co., Ltd., vs. Nu-Grape Bottling Co., Inc., 160 La. 631, 107 So. 471.

The property was sold by the receiver at private sale by order of the court. The privileges on the property were shifted to the proceeds and the claims must be paid according to their rank. In re Connell Iron Wks., 138 La. 702, 70 So. 617.

The receiver, after reducing the assets of the corporation to cash, presented his account, and asked that it be homologated. On his account, he listed the claims which he proposed to pay by preference, among them being that of the Baker Grocery Company for $155.66. A number of the ordinary creditors opposed the account on the ground that this creditor had no privilege. On trial of the opposition, the district court ordered the account amended so as to place this claim among the ordinary debts. That judgment is erroneous and must be reversed.

For the reasons assigned, it is ordered and decreed that the judgment appealed from, striking from the list of privileged claims that of the Baker Grocery Company and ordering it scheduled as an ordinary debt and ordering the receiver to pay it as such, be reversed and further ordered that the receiver's account, listing such claim as privileged, be and is hereby approved and homologated, and the receiver ordered to pay the same by preference acording to its rank; all costs to be paid by opponents.