In re STANSBURY.
No. 6728.

United States District Court
W. D. Louisiana, Shreveport Division.
March 23, 1949.

Charles E. Tooke, Jr., of Shreveport, for bankrupt.

Dimick & Hamilton, of Shreveport, for trustee.

Morgan, Baker & Skeels, of Shreveport, for Pioneer Bank & Trust Co.

DAWKINS, Chief Judge.

On August 22, 1947, the Pioneer Bank & Trust Company of Shreveport, Louisiana, filed in the state district court for Caddo Parish, civil action No. 97547, to foreclose by executory process a mortgage on certain real estate of Luther E. Stansbury. The petition alleged that defendant was temporarily absent from the state, an attorney was appointed to represent him, and the order for the executory process was signed on the same day, August 22, 1947. The five day notice under the state law was simultaneously served upon the attorney so appointed. On September 11, a writ of seizure and sale issued and on the following day the sheriff took possession of the property of the debtor, securing the mortgage. On October 22nd, the property was offered at public auction and bid in by one John K. Foster, an officer and agent of the Pioneer Bank and Trust Co., plaintiff in the foreclosure, for its account, for the sum of $8,800. The sheriff's return shows that costs amounting to $124.50 were paid to him, and the remainder $8,675.50 was "applied to the credit of the said writ as per receipts attached to and made part hereof". Those receipts covered all the remaining proceeds except the sum of $2008.01.

On August 23, 1947, said bank had filed another action, No. 97,950 on the docket of the state court on an unsecured claim in the sum of $5,755.87 with accrued interest upon certain ordinary notes, obtained a writ of attachment and seized the same property, in the hands of the sheriff, alleging as a basis for the attachment one of the grounds provided by the Louisiana Code of Practice, art. 240, to-wit, that Stansbury had left the state permanently (it is to be noted that in the foreclosure filed the day before, the absence was alleged to be temporary). It prayed for judgment in the total amount with interest and for recognition of the lien arising from the said attachment, as permitted by other provisions of the state law. A motion to dissolve the writ upon the ground of falsity of the allegations of the petition was filed on September 13, 1947. After hearing this motion was denied on October 1st, and on the same day Stansbury answered, denying generally the allegations of the attachment complaint. The case was later tried on its merits, a judgment in favor of the bank for the amount claimed was signed on October 22, 1947, and filed for record in the Mortgage Records of Caddo Parish at 12:38 P.M. on the same day. Apparently, no fi. fa. was issued but the sheriff took cognizance of the said recording and allowed the plaintiff bank to retain the balance of the proceeds of the foreclosure for application on that judgment, by merely executing a receipt to him to that effect.

On October 21, 1947, Stansbury filed a petition for and on the next day was adjudged a bankrupt.

On April 12, 1948, the trustee of the estate, who had been selected in the meantime, filed the present proceeding by summary process, and the bank was directed by the Referee to show cause why it should not pay over the said sum of $2008.01 for distribution among general creditors. He alleged that, under the state law, Stansbury was entitled to the remainder of the proceeds in the foreclosure sale and that he as trustee had succeeded to this right; that

another judgment against Stansbury in favor of the Motor Securities Company, Inc. had been rendered less than four months before the filing of the petition in bankruptcy and was therefore null and void. Further, that the said sum of $2008.01 was being held by the bank "without any right or color of title", but that it had refused to pay the same over to the trustee. A rule to show cause was issued and in response thereto the defendant bank plead, first, a lack of jurisdiction to proceed by summary process; and second, vagueness of the complaint. Both motions were overruled. The bank answered, the rule was tried upon its merits and submitted on briefs, to be later filed. Several months elapsed before counsel for the bank filed their brief. When eventually filed, it contended that action of the bank and the sheriff could not be set aside without allegation and proof of insolvency of Stansbury at the time the remainder of the proceeds was applied to the bank's debt. Thereupon, counsel for the trustee, while the matter was still undecided by the Referee, filed an amended complaint, alleging insolvency, which was objected to as coming too late, but the objection was overruled. The Referee sustained the claim of the trustee and ordered the funds paid over.

The bank seeks review, alleging errors as follows:

"1. In maintaining the jurisdiction of the Bankruptcy Court to hear the case and in overruling the plea to the jurisdiction filed by defendant.

"2. In holding that the sum of money mentioned belonged to the Trustee instead of belonging to the Pioneer Bank & Trust Company, the defendant.

"3. In holding that the funds, if paid into the bankruptcy court, were non-exempt and thus taking jurisdiction thereover when the nature of the funds represented the balance realized on the sale of the bankrupt's home, the bankrupt having clearly filed for homestead exemption in these bankruptcy proceedings.

"4. In divesting the State Court of jurisdiction when the State Court had acquired jurisdiction and clearly had a right to proceed with not only the sale of the property under foreclosure but the distribution of the proceeds according to rank and is required of the Sheriff by State Law. by the defendant, Pioneer Bank & Trust

"5. In holding that the lien acquired Company, was null and void and of no effect, when there was no allegation contained in the Trustee's petition when the case was tried to the effect that Stansbury was insolvent at the time the lien was acquired and therefore no proof thereof at the time of the trial.

"6. In permitting the Trustee in Bankruptcy to amend his petition after the trial of the case and after briefs had been submitted which had the effect of changing the issues from a procceding under one Section of the bankruptcy Act to another.

"7. In not holding that the funds in question belonged to the Pioneer Bank & Trust Company.

"8. In holding that the defendant bank was without color of title and thus maintaining the jurisdiction of his Court.

"9. In holding a lien null and void which had already been paid by the sheriff and thus satisfied all contrary to law.

"10. In holding Stansbury insolvent without having heard evidence on the question taking the position that the bankruptcy proceedings were evidence of the fact of which he took notice."

The Referee found, that, at the time the petition in bankruptcy was filed, on October 21st 1947, the title to the property still stood in the name of Stansbury; that on his being adjudged a bankrupt the following day, October 22nd, it passed by operation of law to the trustee, to be later selected, as of the date the petition was filed, Section 70, sub. a of the Bankruptcy Act, and this preceded by one day the sale to Foster under the executory process. For this reason, he evidently concluded, although not so expressed in his written opinion, that it was unnecessary to consider the issue of insolvency because the attempted preference at that time had not been actually accomplished and the receipt by the bank for the remainder of the proceeds of $2008.01 was without effect. He held therefore that the title to the property when the sale and foreclosure were made

by the sheriff, had already passed to the estate subject to rights not contested under the mortgage then being foreclosed, and that no lien against the residue could legally be recognized under the attachment proceedings within four months of adjudication; that the acceptance by the sheriff of receipts, although authorized by the state law, was without legal effect by express provisions of the Bankruptcy Law as against the trustee; and for this reason there was jurisdiction to summarily require the payment of these funds to the estate of the bankrupt under the present law, Section 67, sub. a, 11 U.S.C.A. § 107, sub. a.

█ There can be little doubt that the title as distinguished from possession of the property, passed to the estate of Stansbury as of the date the petition for adjudication was filed, Section 70, sub. a of the Bankruptcy Law, and that no lien thereon could be recognized, which had not already accrued at that time. When the petition in bankruptcy was filed on October 21, 1947, the lien arising from the seizure in attachment was still dependent upon the provisions of Section 67, sub. a, since it was obtained within four months of bankruptcy.

█ As to the property foreclosed upon, it is true the State Court had lawful possession insofar as the mortgage or other liens, validly accrued, were concerned, and could finally apply its proceeds to their satisfaction; but after bankruptcy, as to voidable liens, that possession was controlled by the federal statute and did not authorize the application of any part of the funds to the judgment rendered in the attachment suit, after bankruptcy, if the debtor was insolvent when the attachment was made within the four months period.

Section 67, sub. a(4) of the present act changes the law as it previously existed, by declaring specifically that "The (bankruptcy) court shall have summary jurisdiction of *any* proceeding by the trustee or debtor, as the case may be, to hear and determine the rights of any parties under this subdivision a." Italics by the writer.

See Collier on Bankruptcy, 14th Ed. Vol. 4, sec. 67.18, p. 142 et seq.

█ Section 67, sub. a(1) of the present statute declares that "Every lien against the property of a person obtained by attachment * * * proceedings within four months before the filing of a petition * * * shall be deemed null and void (a) *if at the time when such lien was obtained such person was insolvent * * *"* emphasis by the writer). The privilege given by the law of the state arose from the seizure under the attachment, levied on August 23, 1947, La.Code of Practice, Art. 722, rather than from the judgment signed on October 22, following. See Swift v. Cahn, 151 La. 837, 92 So. 355. It seems reasonably clear therefore that while the Referee had summary jurisdiction to hear this issue under the present law, it was necessary to allege and prove insolvency. When amended petition was filed, it became the duty of the Referee to reopen the case and allow the introduction of evidence for the purpose of determining whether Stansbury was insolvent on August 23, 1947, when the attachment was levied, which gave rise to the privilege.

█ As to the contention that the bankrupt was entitled to a homestead, which he had claimed in filing his petition for adjudication, it is sufficient to say that the bank has no standing to assert this exemption, which would add nothing to its own claims, as it could be asserted by the bankrupt alone, who would have to prove a status entitling him thereto under the state law, i. e. dependents, he was living on the property, etc. The exemption would appear to have been lost as far as the mortgage foreclosure was concerned, whether waived therein or not, as was true of other secured claims which were undisputed. Acosta v. Whitney National Bank, La. Sup., 38 So.2d 391.

The ruling of the Referee is set aside and the matter is sent back for hearing on the issue of solvency.

Proper decree should be presented.