**In re STANSBURY.**

No. 6728.

United States District Court
W. D. Louisiana, Shreveport Division.

May 9, 1951.

Tooke & Tooke, Shreveport, La., for bankrupt.

Wm. B. Hamilton, Shreveport, La., for trustee.

Turner, Baker & Skeels, Shreveport, La., for Pioneer Bank & Trust Co.

DAWKINS, Chief Judge.

The nature of this case is stated in the memorandum opinion filed on March 23, 1949, In re Stansbury, D.C., 83 F.Supp. 124, found in the record, in which the matter was returned to the Referee with directions to try the issue of solvency. This has been done, and the case is now to be considered on a ruling in which the Referee has again found that the alleged lien of the Pioneer Bank & Trust Co. (called "the bank") cannot be sustained. In doing so, the Referee has cited the recent case of U. S. v. Security Trust & Savings Bank, 340 U.S. 47, 71 S.Ct. 111, to the point that, since bankruptcy intervened after an attachment levied in the state court and before the bank's claim had been reduced to a judgment and recorded, the lien arising therefrom had not been perfected and cannot be recognized as against the statutory lien accorded by the Bankruptcy Act in favor of the trustee under Section 70, sub. c, 11 U.S.C.A. § 110, sub. c. This is the first matter to be considered. The cited case can easily be distinguished from the present one, in that U. S. v. Security Trust & Savings Bank, supra, involved a tax lien of the Government, which carries a very high status, as compared with the general coverage of ordinary creditors' rights under Section 70, sub. c, of the Bankruptcy Law. It was found in the cited case that, under the provisions of the California Code of Civil Procedure, Sections 537, 542a, the seizing creditor, prior to judgment, had merely an inchoate privilege or lien, even under the State's jurisprudence, which did not become effective until reduced to judgment and recorded, as against the tax lien resulting from the recording of the government's tax claim in the meantime. Then, too, it was correctly stated that the federal court had the duty to construe the effect of the federal statute as to the Government's rights against the provisions of the state laws and was not bound by interpretations of the state courts. In the present case, however, the state law itself, Louisiana Code of Practice, Article 722, declares in no uncertain terms the effect of seizure under an

attachment, to wit: "The creditor, by the mere act of seizure, is invested with a privilege on the movable and immovable property thus seized, which entitles him to a preference over other creditors, unless the debtor has become bankrupt previous to the seizure." See, also, Swift & Co. v. Leon Cahn & Co., 151 La. 837, 92 So. 355.

Since this "privilege," which has the same meaning as lien under the common law, arises from the seizure, rather than the obtaining and recording of a judgment, it became effective against ordinary creditors from that date.

This leaves the question of solvency for determination. Unfortunately, the note of evidence taken on the trial of this issue has not been transcribed, or at least is not in the record returned to this court. Nor are the schedules, claims, proven, etc. The Referee simply accepted the schedules of the bankrupt as correctly reflecting the amounts of the debts listed thereon, without more, and did the same as to the value of furniture, rejecting all of the testimony as to the latter's value. Clearly, it would appear that the correct amounts of the claims or accounts of ordinary creditors could readily be established by the proofs thereof which were filed, by calling those to testify who were available in the vicinity where the Referee sat, or by sworn accounts through the mails. It quite often happens that the bankrupt does not list all claims, especially in small or carelessly run businesses. In view of the Bank's objection and the fact that the trustee was the plaintiff in this proceeding, it is fielt that the Referee was not justified in accepting as conclusive these schedules. The burden was on the trustee to prove the insolvency of the bankrupt. First State Bank of Crook, Colo. v. Fox, 8 Cir., 10 F.2d 116, and authorities cited therein; In re Weissman, 2 Cir., 19 F.2d 769, 53 A.L.R. 644. The schedules were admissible against the trustee, who for the purposes of this case, stood in the shoes of the bankrupt, just as any other statement against interest of the latter would be, but they were not sufficient to establish insolvency when put at issue in a proceeding in which the trustee

carried the burden of proof. For reasons indicated above, that is, the court does not have before it the testimony taken upon the issue of insolvency or any of the other facts such as proof of claims or the amount of indebtedness over and above that shown by the schedules, and also because the trustee has accepted the latter as establishing the value of the furniture, this case again has to go back to the Referee in order that proper evidence may be introduced and findings made upon the questions both of the liabilities of the bankrupt and of the fair value of the furniture at the date the attachment was levied. Unless this can be done, the court will have no other alternative than to find that the trustee has failed to discharge the burden of proof resting upon him to show insolvency at the time the writ of attachment was levied.