### GUION, BECK et al. v. JOHN A. BROWN.

Privileges are *stricti juris*, and only to be allowed in cases expressly provided for by law. C. C. 3152.

Where a person employs a clerk by the year, and during the year causes that clerk to post up the books of another commercial house, he has no privilege upon the effects of that commercial house for the services of the clerk. The clerk himself has no privilege, because he was not employed by that house. The employer has no privilege, because he was not a clerk:

APPEAL from the District Court of Lafourche, *Randall*, J.   This case arose from an opposition claiming a privilege upon property attached by *M. H. Daunis*. *J. C.* and *A. Beatty*, for appellant.   *Winchester Hall*, for appellees. The judgment of the court was pronounced by

SLIDELL, J.   Several creditors of *Brown* having attached his property and obtained judgment, levied their executions upon the contents of a drug shop kept by him.   *Daunis* then filed a claim of privilege.   The privilege claimed is that accorded by the article 3158 of the Civil Code "for the salaries of clerks, secretaries and other persons of that kind," and which is also spoken of in articles 3181 and 3219.   There was judgment in favor of *Daunis* in the court below; and the other creditors have appealed.

The claim of *Daunis* arose as follows : *Daunis* had employed *Joseph Nicolas* since the year 1848, and he was still in the employ of *Daunis* at the time of the trial of this cause in September, 1850.   The nature of his employment is thus stated by *Nicolas*, in his examination as a witness for *Daunis* in this cause. "The nature of deponent's contract with *Mr. Daunis* was, that deponent would do any work as bookkeeper required by *Mr. Daunis*.   This included not only *Mr. Daunis*' own bookkeeping, but also what he, *Mr. Daunis*, would procure from other houses.   *Mr. Daunis* requested deponent to do some bookkeeping for *John D. Brown*.   Deponent posted up *Mr. Brown's* books from March, 1849, to January, 1850, and made the accounts up to March, 1850, from March, 1849.   Had deponent undertaken the work for himself, he would not have charged less than two hundred and fifty dollars."   Cross-examined on part of plaintiffs in execution: "*Mr. Daunis* owns a plantation ; but lives in this village. *Mr. Daunis* has not been a clerk to deponent's knowledge since he, deponent, was in his employ.   He posted up *Mr. Brown's* books by intervals.   He took the books, he believes, in September ; but the posting was behindhand since March, 1850.   He always took the books to post them at his house, or at *Silvain Daunis*' store.   No part of the compensation coming from this work done for *Mr. Brown*, is to be given to witness.   Witness is a notary public and surveyor.   At the same time he was posting up the books of *Mr. Brown*, he was also posting the books of the firm of *S. T.* and *L. Daunis*.   He looks exclusively to *Mr. Daunis* for the payment of his labors in posting the books of *Mr. Brown*, and this on his yearly contract for his services as above mentioned."

It is obvious, that *Nicolas* had no privilege upon the property of *Brown*, because he was not employed by *Brown*, and had no contract with him.   *Daunis* cannot, therefore, claim as subrogee of *Nicolas*.   The contract was between *Daunis* and *Brown*, and the question is, whether a person thus supplying to another the services of a clerk, has a privilege under the article above mentioned.

The property of the debtor, says article 3150 of our code, is the common pledge of his creditors, and the proceeds of its sale must be distributed among them ratably, unless there exist among the creditors some lawful causes of preference. Privilege can be claimed only for those debts for which it is expressly granted in the code. Art. 3152.

Hence, it has become a familiar doctrine in our reports, as well as in the jurisprudence of France, that privileges are *stricti juris,* and that they are not to be extended from one case to another. The argument from analogy is not permitted in matters of privilege; for it would insensibly lead to the creation of a multitude of preferences, and consequently to abuse. As a learned commentator has properly observed, il n'appartient qu'au legislature, et non au juge, d'etablir des causes de preference, s'il le croit raisonable, parce qu'il n'appartient qu'à lui de sortir du droit commun.

Most of the claims which are mentioned in article 3158, are a class of claims which the lawgiver has thought proper to favor from considerations of humanity and public order. Servants and clerks who are protected by this article are a class of persons who are usually dependent for their support upon their wages or salaries. Because the law, acting upon these considerations, has thought proper to protect the salary of a clerk, we have no right to extend this protection to a person who, having employed this clerk, lets out his services to another. *Daunis,* not the clerk, is the creditor of *Brown,* and *Daunis* is not a clerk; he has, therefore, no privilege.

But the plaintiffs in execution are entitled to a preference, having acquired a privilege by the seizure under *fieri facias.* C. P. art. 722. As to the motion to dismiss this cause for want of jurisdiction, see *Coll* v. *O'Callaghan,* 2d Ann. 190; *Hart* v. *Lodwick,* 8 L. R. 167; *Buckner* v. *Baker,* 11 L. R. 462.

It is therefore decreed, that the judgment of the district court be reversed; and that the opposition of *Daunis* be dismissed, he paying the costs of opposition in both courts.