**In re RICHARDS & HOLLOWAY, Inc.**

No. 6207.

District Court, W. D. Louisiana.

April 12, 1940.

52

Lasseter, Simpson, Spruiell & Lowry, of Tyler, Tex., for Romer Bullington, receiver.

Hunter & Hunter, of Shreveport, La., and J. S. Pickett, of Many, La., for Major Oil Co.

DAWKINS, District Judge.

The partnership of Richards and Holloway, composed of C. C. Richards and C. O. Holloway, were the owners of a certain mineral lease covering N. E. ½ of N. E. ¼ of Section 12, Township 7, N. R. 13 W., situated in Sabine Parish, Louisiana, upon which there was an oil well. About April 27, 1939, a corporation known as Richards and Holloway, Inc., was formed under the laws of Texas, and as of the same date, the partnership executed a deed to it covering this lease. However, this deed was not recorded in the Parish of Sabine, Louisiana, where the property is situated, until September 7, 1939.

On August 12, 1939, the corporation filed a petition for reorganization in the United States Court for the Eastern District of Texas, under chapter X of the bankruptcy law, as amended by the Act of Congress, June 22, 1938, 11 U.S.C.A. § 501 et seq., known as the Chandler Act. Romer Bullington, together with the said Richards and Holloway, were appointed cotrustees. They took charge of the property of the corporation and also of the said lease in Sabine Parish, including all personal or movable property connected therewith. On August 26th, the Major Oil Company filed suit in the state court of Sabine Parish, Louisiana, on a claim against the partnership (not the corporation) and attached the lease and property situated thereon.

On October 19, 1939, Bullington, as receiver and trustee, filed in this court a petition setting forth the proceedings in bankruptcy court at Tyler, Texas, alleging that he had taken possession of said property in Sabine Parish, and that notwithstanding it had been seized by the sheriff of the state court under a writ of attachment issued in the case of Major Oil Company

against Richards and Holloway, the partnership, and prayed that a receiver be appointed for the said property as an ancillary proceeding. Bullington was accordingly appointed receiver, and the matter was referred to the referee of this district to conduct the necessary proceedings to determine the issues thus raised. Subsequently, an amended petition was filed by Bullington alleging that the sheriff and the Major Oil Company had interfered with his possession and praying for a writ of injunction, which was issued. Thereupon, the Major Oil Company answered and set up the claim that the property, at the time of its attachment, as shown by the conveyance records of Sabine Parish, belonged to the partnership and attacking the unrecorded transfer as without effect as to it.

The matter was heard upon all issues by the referee, who found that the bankruptcy trustees had taken actual physical possession of the property upon their appointment before the suit in the state court had been filed and "if Richards and Holloway, Inc., was not in bankruptcy and if the possession of the property had not been vested in the bankruptcy court, the seizure under the attachment in the suit of Major Oil Company would be good. That is to say, the failure of Richards and Holloway, Inc., to file of record the act of sale, dated April 27, 1939, of the mineral lease, would deny it the right to claim the property adversely to the creditor, who seized it as the property of the partnership. This rule of law is applicable only to the mineral lease (which is an immovable) and such equipment as becomes immovable by destination. It does not apply to movables, as registration of acts of sale of movables is not required. However, as between the partnership and the debtor corporation the sale is good annd passed title to the corporation. But the Referee agrees with the contention of the plaintiff, Romer Bullington, Trustee, that the property, having been surrendered by the debtor corporation as its own, and the Bankruptcy Court, through its trustee, having taken possession thereof, the jurisdiction of said Court cannot be disturbed by a seizure of the property by an officer acting under a writ of the State Court. Without a seizure under the writ of attachment, the Major Oil Company has no lien or interest in the property. Its lien on the property arises under the State law through the attachment. The fact that the

property was in possession of the Bankruptcy Court, which had jurisdiction thereof, it was in *custodia legis*, and thus free from seizure. The seizure, therefore, is ineffective.

"Section 70 of the Amended Bankruptcy Act, 11 U.S.C.A. § 110, vests in the trustee title to all the property of the bankrupt, etc.

"Section 70, sub. c, reads in part as follows: ' * * * The trustee, as to all property in the possession or under the control of the bankrupt at the date of bankruptcy or otherwise coming into the possession of the bankruptcy court, shall be deemed vested as of the date of bankruptcy with all the rights, remedies, and powers of a creditor then holding a lien thereon by legal or equitable proceedings, whether or not such a creditor actually exists; and, as to all other property, the trustee shall be deemed vested as of the date of bankruptcy with all the rights, remedies, and powers of a judgment creditor then holding an execution duly returned unsatisfied, whether or not such a creditor actually exists.'

"In view of the statements set forth herein and the reasonings which the Referee has enunciated, the following conclusion is his opinion and order:

"The jurisdiction of the Bankruptcy Court of the Eastern District of Texas is recognized and the possession of the trustee and ancillary receiver, Romer Bullington, of the property in controversy is likewise recognized, and it is held that said property was not subject to seizure and that no legal seizure has been made."

The Major Oil Company brought the matter before this court for review.

### Opinion.

It is the contention of counsel for Bullington (hereafter called the trustee) that the bankruptcy court for the Eastern District of Texas acquired exclusive jurisdiction of the property both by the filing of the petition and the taking of possession by the trustee before the attachment in the state court was levied, and that it alone should "determine all matters concerning said property" and further, that "such jurisdiction can not be interfered with in any way by a state court, or for that matter, a Federal court of equal jurisdiction." On the other hand, attorneys for the Major Oil Company take the position that this court, in the exercising of ancillary jurisdiction, has the power and duty to determine the rights of the parties, especially since that company has consented and submitted its claim in this proceeding.

I am of the view that this court, under the circumstances, does have the power, under its ancillary jurisdiction, to determine the question of whether or not the said Major Oil Company has any rights in the property, by virtue of its attachment, as against the trustee in bankruptcy. See Bankruptcy Act, Section 2 (20), U.S.C.A., Tit. 11, Section 11 (20); Butler v. Ellis et al., 4 Cir., 45 F.2d 951; In re Meyer & Judd, D.C., 1 F.2d 513; In re Mill Iron Construction Co., D.C., 56 F.2d 248. It is true that the Bankruptcy Act, Section 70, sub. c, vests in the trustee, as of the date of the bankruptcy (filing of the petition) "all the rights, remedies, and powers of a creditor then holding a lien thereon [the property] by legal or equitable proceedings, whether or not such a creditor actually exists" as to "all property in the possession or under the control of the bankrupt" and "as to all other property, the trustee shall be [is] deemed vested as of the date of the bankruptcy with all the rights, remedies, and powers of a judgment creditor then holding an execution duly returned unsatisfied, whether or not such a creditor actually exists." However, we are concerned here with the question of how far the state law comes into play in the present case. In the first place, it must be recognized that the Major Oil Company was not and is not a creditor of the corporation, but of the partnership, and it is, to say the least, doubtful as to whether it could assert any claim against the estate of the corporation in the court of primary jurisdiction.

The Civil Code of Louisiana, Articles 2264 and 2266, provides:

"*2264. Immovables—Acts concerning—Registration—Third persons.*—No notarial act concerning immovable property shall have any effect against third persons, until the same shall have been deposited in the office of the parish recorder, or register of conveyances of the parish where such immovable property is situated."

"*2266. Contracts and judgments affecting immovable property—Failure to record —Effect—Recording—Effect.*—All sales, contracts and judgments affecting immovable property, which shall not be so recorded, shall be utterly null and void, except

between the parties thereto. The recording may be made at any time, but shall only affect third persons from the time of the recording.

"The recording shall have effect from the time when the act is deposited in the proper office, and indorsed by the proper officer."

Under the state law (putting aside for the present the effect thereon of the supervening of a proceeding for reorganization of a corporation under Chapter 10 of the Bankruptcy Law), it is established conclusively both by these codal provisions and the jurisprudence of the state courts interpreting them, that the unrecorded conveyance by the partnership to this corporation was "utterly null and void" in so far as the rights of the creditors of the former to proceed against the property in question were concerned. See State ex rel. Hebert v. Recorder of Mortgages, 175 La. 94, 143 So. 15, 17, which reviews and analyzes the Louisiana cases. As pointed out in this cited case and emphasized in those to which it refers, the refusal to give any recognition to an unrecorded conveyance of an interest in real property in this state is "a matter of public policy upon the subject of the most important property right with which it deals * * *" and that "there can be no actual owner of immovable property, so far as third persons are concerned, other than the owner of record." There are many other cases in the Louisiana Reports, but the one thus cited and those which it reviews, I think, make it clear beyond question, that the Major Oil Company, under the law of Louisiana, could ignore the unrecorded deed from the partnership to the corporation and attach the property for the debt of the former.

■ Again putting aside for the present the question of bankruptcy, let us see what are the effects of an attachment by a creditor under the law of this state. The Louisiana Code of Practice provides:

"722. *Privilege of creditor on seized property.*—The creditor, by the mere act of seizure, is invested with a privilege on the movable and immovable property thus seized, which entitles him to a preference over other creditors, unless the debtor has become bankrupt previous to the seizure."

"723. *Successive seizures—Preferences.* —When several successive seizures are made of the same property, the creditors making them are entitled to a preference over other ordinary creditors, according to the order of their seizures."

"724. *Attachments and sequestrations— No privilege until judgment and order of execution.*—Provisional seizures and sequestration give no privilege to those who have made them, until they have obtained a judgment and order of execution on the property sequestered or provisionally seized."

It was settled long ago by the state courts that the words "provisional seizure" are a misprint, and that the last-quoted Article, No. 724, should begin "Attachments and Sequestrations, etc." Beck v. Brady, 6 La.Ann. 444. Notwithstanding the language that such seizures "give no privilege to those who have made them, until they have obtained a judgment and order of execution on the property * * *", where the attachment proceedings are carried into final judgment, a privilege is perfected and relates back to the date of seizure. Emerson v. Fox, 3 La. 178; Grant v. Fiol, 17 La. 158; In re Bryce Cash Store, 12 La.App. 365, 124 So. 544. This privilege gives the plaintiff the right of having his judgment satisfied in preference to other creditors. Scholefield v. Bradlee, 8 Mart., O.S., 495; Hepp v. Glover, 15 La. 461, 35 Am.Dec. 206; Guion v. Brown, 6 La.Ann. 112; Harmon v. Juge, 6 La.Ann. 768; Cochran v. Walker, 10 La.Ann. 431; Edson v. Freret, 11 La.Ann. 710; Tufts v. Casey, 15 La.Ann. 258; Swift & Co. v. Leon Cahn & Co., 151 La. 837, 92 So. 355. Therefore, as between a receiver of the partnership of Richards and Holloway, had one been appointed outside of bankruptcy, the Major Oil Company would have had the right to proceed to judgment upon its claim, with a resultant lien and privilege upon the property which it seized, entitling it to be paid by preference over all others in the absence of bankruptcy of the partnership. It must be remembered that the partnership is not in bankruptcy, nor is the Major Oil Company a creditor of the corporation. Hence, if the state codal provisions make ineffective an unrecorded conveyance of the lease as against the receiver and trustee in this case, the reference in Article 722 of the Code of Practice to the debtor becoming "bankrupt previous to the seizure" can have no bearing in the present instance, for the reasons above stated, i. e., the partnership which is the

debtor of the Major Oil Company is not a bankrupt.

The question with which we are concerned is, did the bankruptcy or proceedings under chapter X of the Chandler Act of the corporation and the taking of physical possession of the property by the receiver and trustee, prevent the Major Oil Company from proceeding by attachment against the partnership in the state court, in view of the Louisiana Law, which makes an unrecorded conveyance of real property "utterly null and void" as to third persons? This also necessarily involves the issue of whether the provisions of the bankruptcy law quoted earlier, which were first added by the amendment of June 25, 1910, 36 Stat. 840, 11 U.S.C.A. § 75, sub. a(2), serve to vest in the bankruptcy court jurisdiction over and to give to the trustee a superior right of possession to the property regardless of the fact that the conveyance was not recorded, in view of the state law of recordation. By express provisions of the Bankruptcy Act, all rights, including liens under the state law, which were more than four months old when the petition was filed, are preserved to the creditors of the corporation, but if unrecorded, they certainly could not prevail over the Major Oil Company, if sought to be enforced against this real estate by virtue of this unrecorded transfer. Nor would the situation be different, if the corporation had gone into the hands of an equity receivership. Therefore, it is only because of the said provisions of the bankruptcy law, that these same creditors may be said to enjoy any greater right. In such circumstances, I think it is the duty of this court to give effect to both the state and federal statutes, if this can be done without conflict. Of course, in so far as personal or movable property, the conveyance of which does not have to be recorded, is concerned, the trustee became vested with title by operation of law wherever situated. Undoubtedly, if there had been a verbal sale or agreement to convey the real property, instead of a transfer unrecorded as in this instance, and even though the bankrupt and his trustee had gone into physical possession, I am convinced that neither would have had any standing to resist the attachment for no proof of the conveyance could be made to support the claim of either. It seems to me that the federal and state statutes can be reconciled and each given effect by holding that it is the purpose of the former to vest in the trustee or receiver such title as a bankrupt enjoys under the law of the state where the property is situated, affected by the lien added under the amendment of 1910 and of June 22, 1938. In this instance, the bankrupt had no title to the real estate under the state law as against third persons, in which class the Major Oil Company falls, and to say that a bankruptcy court was not vested with jurisdiction, and its trustee did not acquire title or the rights of possession, does not thwart the object of the Bankruptcy Act, which was to preserve for the benefit of creditors all rights of the estate, according to the laws of the situs of the property. The taking possession by the bankruptcy receiver and trustee was no more justified or authorized as against creditors of the partnership, in view of the state law, than was that of the bankrupt corporation before the petition was filed in the Texas district. It had no basis upon which to stand, unless the state law is to be ignored. I can not believe that Congress intended to over-ride the codal provisions of the state, by seeking to protect the rights of creditors in bankruptcy. On the contrary, the Chandler Act in Subsection c of Section 47, 11 U.S.C.A. § 75, sub. c, provides, "the trustee shall, within ten days after his qualification, record a certified copy of the order approving his bond in the office where conveyances of real estate are recorded in every county where the bankrupt owns real property or an interest therein, not exempt from execution, and pay the fee for such filing." I am impressed that the only purpose of the provision is to give notice to all concerned that the property of the bankrupt is in custodia legis and to avoid complications with respect to state proceedings against property standing in the name of the bankrupt estate.

It is my conclusion that the Major Oil Company is entitled to proceed to judgment upon its attachment in the state court and that its claims must be first satisfied out of the proceeds of the real property seized, including such articles as had become immovables by destination under the state law, placed thereon by the partnership while it owned the property and before the unrecorded transfer to the corporation was executed. Such as was placed there by the corporation, which was in law a third person and not the owner,

did not become, in view of the state law, immovables by destination. Inasmuch as the deed has been recorded since bankruptcy and subsequent to the attachment, the trustee has become vested with the title thereto, subject to the Major Oil Company's rights, and is, therefore, entitled to intervene in the state court for the purpose of seeing that the property is sold to the best advantage and claiming the residue for the benefit of creditors of the corporate bankrupt. If the court of primary jurisdiction of the bankruptcy proceedings sees fit, it may direct the trustee to discharge such judgment when obtained as the Major Oil Company may ultimately recover and have the real estate turned over to that court for administration.

There should be judgment in accordance with the views herein expressed.